[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12927
Non-Argument Calendar
_____

D.C. Docket No. 9:11-cr-80187-KLR-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARMANDO ANTONIO CASTRO,
a.k.a. Antonio,
a.k.a. Tony,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 26, 2013)

**ON PETITION FOR REHEARING**

Before PRYOR, MARTIN and FAY, Circuit Judges.

PER CURIAM:

This appeal presents the issue whether Armando Antonio Castro is entitled to vacatur of his guilty plea on the ground that the district court committed plain error, in violation of Federal Rule of Criminal Procedure 11(c)(1), by advising Castro about the penal consequences of rejecting his written plea agreement. Castro entered a written agreement with the United States to plead guilty to several counts of his indictment, but Castro renounced his agreement on the morning of his change of plea hearing. After the district court advised Castro that, "if you don't plead today[,] [the government] may charge you with other things that will make your sentence even more severe," Castro entered pleas of guilty in accordance with his plea agreement. We initially granted Castro relief under our precedents that established a rule of automatic vacatur for judicial participation in plea discussions, but we sua sponte vacated our earlier opinion and granted rehearing of this appeal after the Supreme Court abrogated that rule in United States v. Davila, 569 U.S. ___, 133 S. Ct. 2139 (2013). Under Davila, we must consider "the full record" and determine "whether it was reasonably probable that, but for the . . . [single comment of the district court], [Castro] would have exercised his right to go to trial." Id. at 2150. We ordered the parties to file supplemental briefs addressing how to resolve this appeal in the light of Davila, and they did so. Because the record does not establish that, but for the comment of the district court, Castro would have exercised his right to trial, we affirm his convictions.

2

## I. BACKGROUND

A grand jury returned a 14-count indictment that charged Castro for five counts of possessing with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), (b)(1)(D), one count of possessing with intent to distribute marijuana and cocaine, id. § 841(a)(1), (b)(1)(C), (b)(1)(D), two counts of carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1), four counts of possessing a firearm in violation of a court order, id. §§ 922(g)(8), 924(a)(2), one count of possessing a firearm with an obliterated serial number, id. § 922(k), and one count of dealing in firearms without a license, id. §§ 922(a)(1)(A), 924(a)(1)(D).  A magistrate judge appointed the federal public defender to represent Castro at his initial appearance, but Castro later retained a private attorney, Richard Castillo.   At his arraignment hearing, Castro entered a plea of not guilty to each charge in his indictment.

Castro later negotiated a written plea agreement with the United States and signed the agreement a few minutes before his change of plea hearing on January 25, 2012.  During the plea colloquy, Castro told the district court that he was under the influence of "medication" and it affected his ability to reason or think. Attorney Castillo said that Castro's response was the "first time that [he had] heard from Mr. Castro today that he was having an issue with the medication as to his ability to understand what was going on with the proceedings," and Castillo

3

requested additional time to confer with Castro.  After Castillo spoke with Castro and "still [had] some reservations as to his ability to comprehend everything," Castillo requested a delay to determine "what [Castro had been] taking because when . . . sp[eaking] with him [two nights earlier] until about 11:00, [counsel] didn't detect any issues with him comprehending" the plea agreement.  The district court continued Castro's change of plea hearing for two weeks.

On February 7, 2012, three days before his change of plea hearing resumed, Castro again signed a plea agreement with the United States.  Castro agreed to plead guilty to seven charges: two counts of possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(D), one count of possessing with intent to distribute marijuana and cocaine, id. § 841(a)(1), (b)(1)(C), (b)(1)(D), one count of carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1), two counts of possessing a firearm in violation of a court order, id. §§ 922(g)(8), 924(a)(2), and one count of dealing in firearms without a license, id. §§ 922(a)(1)(A), 924(a)(1)(D).  In exchange, the United States agreed to dismiss the seven remaining charges and to recommend that Castro receive reductions to his sentence that corresponded with his acceptance of responsibility and his level of cooperation.

On the morning of his change of plea hearing, Castro notified Attorney Castillo that he did not want to plead guilty.  At the hearing, Castillo announced

4

that Castro did not want to change his plea to guilty; Castro was dissatisfied with Castillo's representation; and Castro wanted the district court to appoint him a new attorney from the public defender's office. The district court questioned Castro, who confirmed that he did not want to plead guilty:

> THE COURT:  Is this your wish, you did not want to go forward with the plea?
>
> THE DEFENDANT:  That's right.
>
> THE COURT:  Is it still your wish that you don't want Mr. Castillo to represent you?
>
> THE DEFENDANT:  I can't pay him anymore, no.
>
> THE COURT:  This means that you don't want him to represent you?
>
> THE DEFENDANT:  I don't want him to represent me.
>
> . . .
>
> THE COURT: I guess I could appoint the public defender.

At Castillo's request, the district court advised Castro of the consequences of reneging on his plea agreement. Castro decided to plead guilty.

> MR. CASTILLO:  I just need Mr. Castro [to] understand that if he doesn't resolve the matter today that the government [intends] to withdraw whatever plea offer has been conveyed.
>
> THE COURT: Do you understand that the government has made you a plea offer in which they have made certain concessions, that if you don't plead today they may charge you with other things that will make your sentence even more severe?  Do you understand that?
>
> THE DEFENDANT:  Yes.

5

THE COURT:    And you still want to go ahead with a public defender?

THE DEFENDANT:  No.

THE COURT:  Who do you want to represent you?

THE DEFENDANT:  I'll just finish with Mr. Castillo then.

THE COURT:  Do you want to plead today then?

THE DEFENDANT:  Yes.

At the direction of the district court, Castro signed another copy of the plea agreement.  Castro identified the written agreement, which stated that he agreed to "enter[] into the Plea Agreement freely and voluntarily, and no threats or promises, other than the promises contained in this . . . Agreement, were made to induce [him] to enter his plea of guilty."  Castro verified that he understood the seven charges to which he was pleading guilty; the potential sentence for each offense; the rights attendant to trial that he was waiving by pleading guilty; and that he had the "right to plea[d] not guilty . . . and to persist in the plea."  Castro also acknowledged that he had not been coerced to plead guilty and that he could not withdraw his pleas of guilty if he was dissatisfied with the sentence imposed by the district court.

THE COURT:    Has anyone attempted in any way to force you to plead guilty?

THE DEFENDANT:  No.
. . .

6

THE COURT:   Do you understand that any sentence the Court renders will be influenced by the advisory sentencing guidelines and no one knows exactly what those guidelines will provide at this time. But that you may not withdraw your plea if the Court should sentence you to a term larger than you are now expecting, you understand that?

THE DEFENDANT:  Yes.

Castro acknowledged that the government could prove the facts proffered in his plea agreement.  The proffer stated that undercover officers visited Castro's rental property in Loxahatchee, Florida, to investigate reports that he was operating a brothel with women who had been smuggled into the United States.  During the visit, Castro bragged to the undercover officers that he controlled a grow house that would produce 60 to 70 pounds of marijuana.  The undercover officers returned to Castro's rental property on several occasions and recorded eight transactions in which they purchased more than 1,000 grams of marijuana, several grams of cocaine, 12 firearms, and large quantities of ammunition.  All of the firearms had been stolen from a single location in Miami-Dade County.  Although Castro was prohibited in a restraining order from possessing firearms and ammunition, Castro displayed on his waistband a black semiautomatic pistol and showed the undercover officers an AK-47 style assault rifle and a .22 caliber rifle during his first two drug transactions.  After agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives and of the Federal Bureau of Investigation arrested Castro on the rental property, the agents searched the property and seized

7

three firearms, various types of ammunition, marijuana and cocaine, and approximately $1,000 in cash.

Castro told the district court that he had reviewed his written plea agreement "today" in Spanish with the assistance of a translator. When asked how he wanted to plead to the charges, Castro responded, "Guilty." The district court found that Castro's "plea of guilty [was] a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense," and the district court accepted Castro's plea.

Castro's presentence investigation report provided an advisory guideline range between 87 and 108 months of imprisonment. In the meantime, Castro hired a new attorney to represent him at sentencing, Richard Della Fera. Della Fera filed an objection to Castro's presentence report that requested that the district court vary downward from the advisory range and sentence Castro to a term of home confinement followed by supervised release. The government responded that Castro had benefitted considerably from his plea arrangement and requested that the district court sentence Castro to 158 months of imprisonment.

The district court sentenced Castro to 156 months of imprisonment. The district court based its decision on evidence that Castro was "running brothels with immigrant prostitutes"; had "[e]ight instances of domestic violence"; and had not "filed any tax returns" despite making "money in various businesses." The district

8

court also mentioned that "the government [had been] very generous in [dismissing a second charge for carrying a firearm], which would have added 25 years."

Eight days after he was sentenced, Castro moved pro se to withdraw his pleas of guilty and to dismiss Della Fera as counsel.  In the motion, Castro "expressed his displeasure with . . . Della Fera, and his sentence and [he] desire[d] to withdraw[] his plea [for] which [he] was sentence[d] to 156 months."  The district court denied Castro's motion after "having reviewed the pertinent portions of the record and being duly advised in the premises."

Castro then retained a third attorney, Allen Stewart Kaufman, who filed a motion for reconsideration arguing that Castro was entitled to withdraw his plea of guilty.  Castro argued that he was "denied his right to counsel under the Sixth Amendment" because "of the misrepresentations of [Paul] Lazarus . . . regarding his ability to represent [Castro] in federal court."  According to Castro, attorney Lazarus accepted a retainer; "convinced [Castro] that [his case] could [be] resolve[d] . . . by way of a plea agreement"; negotiated a plea agreement with the government; and persuaded Castro to plead guilty despite his misapprehensions about the "jail time [being] excessive."  Castro also argued that his plea was unknowing and involuntary because he suffered from "many maladies," ranging from gout and alcohol dependence to kidney and heart disease and, because of those illnesses "and medications, his frame of mind was such that he was unable to

think clearly and rationally with regard to pleading guilty." The district court denied Castro's motion.

Castro appealed and, for the first time, argued that the district court participated in plea discussions, in violation of Federal Rule of Criminal Procedure 11(c)(1). The United States responded that the district court could not have interfered with plea negotiations because Castro had already executed a written plea agreement. We concluded that Castro's appeal was controlled by our holding in United States v. Casallas, 59 F.3d 1173, 1177–79 (11th Cir. 1995), that the district court violated the prohibition against judicial participation by advising the defendant of the consequences of renouncing his plea agreement, and we vacated Castro's pleas of guilty.

After the Supreme Court issued its decision in Davila, we sua sponte vacated our earlier opinion and granted rehearing of the appeal. In a separate order, we instructed the parties to file supplemental briefs. Castro argues that he is entitled to a vacatur of his pleas of guilty because "[i]t is obvious" that the comment of the district court swayed him to plead guilty, as evidenced by his decision to plead guilty on the heels of the judicial participation. The United States responds that Davila cannot satisfy his burden, under review for plain error, to prove "a reasonable probability that, but for the one intemperate remark . . ., he would have gone to trial."

10

## II. STANDARDS OF REVIEW

When a defendant fails to object to an alleged violation of Rule 11(c)(1), we review the alleged violation for plain error. Davila, 133 S. Ct. at 2147; United States v. Brown, 526 F.3d 691, 704 (11th Cir. 2008), cert. granted and judgment vacated on a different ground, 129 S. Ct. 1668 (2009). Plain error occurs when the district court commits an error that is plain, affects the defendant's substantial rights, and "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (internal quotation marks and alterations omitted). Under this standard, "the defendant who [remains] silent . . . has the burden to show that his 'substantial rights' were affected." United States v. Vonn, 535 U.S. 55, 63, 122 S. Ct. 1043, 1048 (2002).

## III. DISCUSSION

Our earlier precedents established that judicial participation in plea discussions of the kind that occurred in this case is plain error, but the Supreme Court abrogated our rule of automatic vacatur and held that "Rule 11(h) . . . calls for across-the-board application of the harmless-error prescription (or, absent prompt objections, the plain-error review)." Davila, 133 S. Ct. at 2149. In so doing, Davila rejected our long-standing precedents providing that a defendant need not show actual prejudice to obtain relief from a plea of guilty obtained in

11

violation of Rule 11(c)(1).  See United States v. Tobin, 676 F.3d 1264, 1303–07 (11th Cir. 2012); United States v. Diaz, 138 F.3d 1359, 1362 (11th Cir. 1998); Casallas, 59 F.3d at 1176–79; United States v. Corbitt, 996 F.2d 1132, 1134–35 (11th Cir. 1993).  "We are bound to follow a prior panel or en banc holding, except where that holding has been overruled or undermined to the point of abrogation by a subsequent en banc or Supreme Court decision."  United States v. Whatley, 719 F.3d 1206, 1216 (11th Cir. 2013) (quoting Chambers v. Thompson, 150 F.3d 1324, 1326 (11th Cir. 1998)).

Davila instructs that, when a defendant does not complain to the district court about its participation in plea discussions, a reviewing court "should . . . consider[] whether it was reasonably probable that, but for the . . . exhortations [of the district court], [the defendant] would have exercised his right to go to trial." Davila, 133 S. Ct. at 2150.  To make that determination, we must evaluate the comments of the district court, "not in isolation, but in light of the full record."  Id. Although the immediate response of the defendant to the judicial participation informs our decision, "other portions . . . of the limited record" are equally illuminating in determining what effect the participation had on the defendant's decision.  See Vonn, 535 U.S. at 74, 122 S. Ct. at 1054–55.  In other words, we can consider events that precede and postdate the error.  See Davila, 133 S. Ct. at 2149–50 (discussing the defendant's conduct after the judicial participation and

12

explanation for his decision to plead guilty); Vonn, 535 U.S. at 74–75, 122 S. Ct. at 1055 (instructing the appellate court on remand to consider a defendant's sentencing hearing and the record of the defendant's initial appearance and arraignment); see also United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004) ("[T]he reviewing court[] [examining for plain error is] informed by the entire record.").

Because he failed to raise this issue in the district court, Castro faces a "daunting obstacle" in obtaining a vacatur of his guilty plea. See United States v. Pielago, 135 F.3d 703, 708 (11th Cir. 1998). Castro must prove that, "but for the error [of the district court], he would not have entered the plea." Brown, 526 F.3d at 704 (quoting Dominguez Benitez, 542 U.S. at 83, 124 S. Ct. at 2340). And that burden "is anything but easy" to satisfy. United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005). Castro must prove that the error made a difference in his decision. If the record establishes that it is as likely that the error had no effect on Castro's decision, he cannot prevail:

> [T]he burden truly is on the defendant to show that the error actually did make a difference: if it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses.

Id. at 1300.

13

The timing of Castro's decision to plead guilty is not dispositive. The comment by the district court arguably had an effect on Castro's decision, but prejudice is not measured "based on the speculative standard of what is 'arguable.'" Id. at 1304. "'Arguable' is not enough to satisfy the third-prong test of prejudice." Id. Castro asserts that he was prejudiced by the comment, but he fails to explain how the comment affected his decision.

After Castro decided to change his plea to guilty, he signed another copy of his plea agreement that stated he had not been pressured to plead guilty, and he then verified during an oral colloquy that he had not been forced by "anyone" to plead guilty. The district court advised Castro that he was entitled to "persist in the plea" of not guilty, but Castro admitted that he was guilty of several drug and firearm offenses. Castro has never repudiated those admissions. See United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Gonzalez–Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("[T]here is a strong presumption that the statements made during the colloquy are true.").

Castro later moved to withdraw his plea, but sought that relief on grounds that he was dissatisfied with his sentence; he was denied his right to counsel; and

14

he had pleaded guilty under duress from his attorney.  Castro did not mention the comment by the district court.

"[P]articular facts and circumstances matter" in evaluating whether a defendant has been prejudiced by judicial participation in plea discussions, Davila, 133 S. Ct. at 2149, and we are not convinced that Castro would have rejected the plea agreement had the district court not advised him of the consequences of reneging on his plea agreement.  By pleading guilty, Castro avoided prosecution and punishment for seven offenses, including a second charge of carrying a firearm during a trafficking offense for which he faced a mandatory sentence of 25 years of imprisonment that had to run consecutively to his other sentences.  See 18 U.S.C. § 924(c)(1)(C)(i), (D)(ii).  And Castro's conduct in the district court smacks of gamesmanship and suggests that he decided to plead guilty because he did not want to forego a favorable agreement.  Castro changed attorneys repeatedly; retained attorneys, despite telling the court that he was penniless; and postponed entering a change of plea ostensibly because he was under the influence of an unspecified "medication."  See United States v. Graham, 643 F.3d 885, 894 (11th Cir. 2011) ("A defendant cannot use the right to counsel as a means to manipulate the court and cause delay.").  Castro later moved pro se to withdraw his plea because he was displeased with the sentence he received, see Gonzalez–Mercado, 808 F.2d at 801 (explaining that defendants should not be permitted "to use the

15

guilty plea as a means of testing the weight of the potential sentence"), and when that proved unsuccessful, he sought reconsideration on the grounds that he had been denied his right to counsel and had "succumbed" to the pressure exerted by defense counsel to plead guilty, see United States v. Buckles, 843 F.2d 469, 472 (11th Cir. 1988) ("A defendant cannot complain of coercion where his attorney, employing his best professional judgment, recommends that the defendant plead guilty.").

"All pleas of guilty are the result of some pressures or influences on the mind of the defendant," Schnautz v. Beto, 416 F.2d 214, 215 (5th Cir. 1969), but in this appeal it is unclear what compelled Castro to plead guilty. Although it is plausible that Castro decided to plead guilty because of the comment of the district court, it is, at least, equally plausible that Castro pleaded guilty to shorten the duration of his inevitable sentence for crimes that he admittedly committed. Because "the effect of [the] error on the result in the district court is uncertain or indeterminate . . . [Castro] has [failed to prove] . . . that the result would have been different but for the error; he . . . [was] prejudice[d]; . . . [or] his substantial rights have been affected." Rodriguez, 398 F.3d at 1301.

## IV. CONCLUSION

We **AFFIRM** Castro's convictions.

16

MARTIN, Circuit Judge, concurring in result only:

I agree with the Majority's conclusion that Mr. Castro has not shown the District Court's Rule 11(c)(1) violation was plain error. I write separately to raise three points that bear emphasis. First, although United States v. Davila changed the standard for evaluating a Rule 11(c)(1) error on appeal, see 569 U.S. ___, ___, 133 S. Ct. 2139, 2143 (2013), it did not change our law for determining whether there was a Rule 11(c)(1) error or whether that error was plain. It is still true that the District Court's comments described in the Majority opinion violated the Rule 11(c)(1)'s prohibition on judicial participation in plea discussions. Thus, Mr. Castro has shown error that is plain. See United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002) ("[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." (quotation marks and alterations omitted)).

Second, Rule 11(c)(1)'s ban on judicial involvement in plea discussions remains an important prophylactic rule even after Davila. While Davila overruled our precedent that judicial participation in plea discussions required automatic vacatur without regard to case specific circumstances, see 133 S. Ct. at 2143, 2148, the Supreme Court did not immunize violations of Rule 11(c)(1) from appellate scrutiny. Rather, Davila held that a reviewing court must "consider all that transpired in the trial court in order to assess the impact of the error on the

17

defendant's decision to plead guilty." Id. at 2148.  In doing so, the Supreme Court concluded that Rule 11(c)(1) errors are not "structural," meaning they do not belong to a "very limited class of errors that trigger automatic reversal because they undermine the fairness of a criminal proceedings as a whole." Id. at 2149 (quotation marks omitted).  In other words, Rule 11(c)(1) errors, like most errors appellate courts review, are subject to harmless error analysis.  But that does not diminish the important prophylactic purposes that Rule 11(c)(1) serves and promotes.

It is just as true today, as it was before Davila, that Rule 11(c)(1) was "designed to totally eliminate judicial pressure from the plea bargaining process." United States v. Corbitt, 996 F.2d 1132, 1135 (11th Cir. 1993).  Davila did nothing to vitiate the important reasons that warrant separating the sentencing court from the plea discussions, such as: (1) judicial participation in the plea process may coerce the defendant into accepting a proposed agreement or entering a plea of guilty involuntarily; (2) judicial participation may affect the court's impartiality; and (3) judicial participation affects the appearance of impartiality.  See United States v. Casallas, 59 F.3d 1173, 1178 (11th Cir. 1995).

Finally, turning to the merits of Mr. Castro's claim, this case presents for me a closer question as to whether Mr. Castro's substantial rights were affected than the Majority's opinion suggests.  As I've said, I think the Majority correctly

18

concluded that Mr. Castro has not shown, based on the full record, that "it was reasonably probable that, but for the . . . [single comment of the district court], [Castro] would have exercised his right to go to trial." Majority Op. at 2 (quoting Davila, 133 S. Ct. at 2150 (alterations in Majority Op.)). But the Majority's opinion goes further than I would in minimizing the timing of Mr. Castro's guilty plea in relation to the Rule 11(c)(1) violation by saying: "[t]he timing of Castro's decision to plead guilty is not dispositive. The comment by the district court arguably had an effect on Castro's decision, but prejudice is not measured based on the speculative standard of what is arguable." Majority Op. at 14 (quotation marks omitted).

While timing may not always be "dispositive," I say it remains an important factor. Indeed, in light of the closeness in time of the District Court's comment to Mr. Castro and his decision to plead guilty, it seems to me that the effect is more than what the Majority characterizes as "arguable." There are circumstances in which timing may still be dispositive. Davila is instructive on this point:

> Had Davila's guilty plea followed soon after the Magistrate Judge told Davila that pleading guilty might be "the best advice" a lawyer could give him, see App. 152, this case may not have warranted our attention. The automatic-vacatur rule would have remained erroneous, but the Court of Appeals' mistake might have been inconsequential. See Tr. of Oral Arg. 47 (Counsel for the Government acknowledged that if there is a "serious [Rule 11(c)(1) ] error," and the defendant pleads guilty "right after that," the error would likely qualify as prejudicial).

19

133 S. Ct. at 2149.

In <u>Davila</u> there was a three month gap between the Rule 11(c)(1) violation and the defendant's guilty plea. <u>Id.</u> ("Three months distanced the <u>in camera</u> meeting with the Magistrate Judge from Davila's appearance before the District Judge who examined and accepted his guilty plea and later sentenced him."). In contrast, there was no gap in Mr. Castro's case. At Mr. Castro's change of plea hearing, he told the District Court that he did not want to plead guilty. In that same proceeding, the District Court advised Mr. Castro that if he did not plead guilty that day, there might be consequences that would result in a more severe sentence for him. Then Mr. Castro immediately went forward with his plea of guilty. Because there was no gap in time, Mr. Castro is not similarly situated to the defendant in <u>Davila</u>. Further, because the District Court itself committed the Rule 11(c)(1) violation at the time of the plea hearing—unlike in <u>Davila</u> where a magistrate judge had committed the violation three months earlier—it cannot be said "there was no blending of judicial and prosecutorial functions" at the time Castro pleaded guilty. <u>Id.</u> For these reasons, I believe Mr. Castro's case is factually distinguishable from <u>Davila</u> and presents a closer question on prejudice.

Even so, taking into consideration all of the circumstances identified by the Majority and the fact that Mr. Castro had the burden to prove his substantial rights were affected because he failed to object in the District Court, I am persuaded that

20

there is not a reasonable probability that, but for the District Court's single statement (which was error and plain), Mr. Castro "would have exercised his right to go to trial." <u>Id.</u> at 2150.