[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11863
Non-Argument Calendar
_____

D.C. Docket No. 7:14-cr-00048-HL-TQL-10

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SARAH CARTER,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(April 26, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

Sarah Carter appeals her conviction for one count of conspiracy to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B). She argues that the district court abused its discretion in denying her motion to withdraw her guilty plea and her motion to rescind the plea agreement. She also argues that her interim counsel provided ineffective assistance and that the district court improperly commented on her plea agreement in violation of the Federal Rules of Criminal Procedure.

## I

A federal grand jury returned an indictment against Ms. Carter and 12 codefendants for a series of drug-related offenses. Ms. Carter pled guilty to a superseding information of one count of conspiracy to possess with intent to distribute cocaine and cocaine base. She stipulated that she conspired with her family to distribute cocaine and that her home was used for manufacturing and distributing cocaine base, among other criminal acts.

Initially Ms. Carter was represented by the federal public defender's office. But Ms. Carter then retained Kimberly Copeland, who served as counsel until she was suspended from the practice of law for six months. During that interim period, James Hardin, one of Ms. Copeland's colleagues, entered his appearance as counsel for Ms. Carter. Mr. Hardin represented her during the plea process

2

relevant to this appeal.  Ms. Copeland reentered her appearance and joined Mr. Hardin in Ms. Carter's representation a few months after her reinstatement.

Ms. Carter signed her plea agreement on October 1, 2015.  The agreement stated, in part, that Ms. Carter was subject to a sentence of between 5 and 40 years' imprisonment.  The government agreed to dismiss three other charges against Ms. Carter and to submit motions to reduce her sentence if she provided substantial assistance.  The plea agreement, however, stated contradictory amounts of cocaine attributable to Ms. Carter.  In one section of the plea agreement, the amount of cocaine attributed to Ms. Carter was a range of 5 kilograms to 15 kilograms, while in a later section, 50 kilograms to 150 kilograms were attributed to her.

At her change of plea hearing, the district court confirmed that Ms. Carter understood the nature of her offense and the possible sentence she could receive. She affirmed that she had read the plea agreement, she had not been coerced to plead guilty, and her plea was entered into freely and voluntarily.  She also said she understood that she could not rely on any sentence estimate provided to her, that her attorney had explained the range of penalties, and the district court could sentence her to any sentence within the statute's range, which was 5 years' to 40 years' imprisonment.  The final PSI suggested an imprisonment range of 235 to 293 months based in part on a drug quantity of 50 to 150 kilograms of cocaine.

On February 24, 2016, before sentencing, Ms. Carter filed a motion to withdraw her guilty plea. She alleged that she did not enter into her plea knowingly and voluntarily (a) because she believed she was entering into a plea agreement that would result in a 5-year sentence due to her counsel's explanation of the plea agreement, and (b) because she did not receive a copy of the plea agreement before the plea colloquy.

The parties appeared at a hearing the next day. The district court heard from Ms. Copeland, Mr. Hardin, and the government. Mr. Hardin told the district court that he arrived an hour before the plea hearing to explain the plea agreement to Ms. Carter and her family, and to explain the plea colloquy process. He also told the district court that Ms. Carter did not seem confused.

The district court asked Ms. Copeland whether Ms. Carter was aware of the consequences of withdrawing her plea. Specifically, it asked if she was aware that she was putting herself in jeopardy of serving a 25-year sentence or a life term of imprisonment instead of serving "12 as things stand now" and that the government did not have to negotiate with her once the plea was withdrawn. *See* D.E. 499 at 41–42. Upon hearing "for the first time" that Ms. Carter could receive a 12-year sentence from the district court, Ms. Carter withdrew her motion and objections to the presentence investigation report. *Id*. at 12.

At the end of the hearing, and after hearing from Ms. Carter, the district court said that it believed that the case had been mishandled "from first to last," that it wanted Ms. Carter to make her decision whether to plead guilty "freely and intelligently," and that it was "not satisfied she'd had good advice." *Id.* at 54. It then decided it would appoint new counsel for Ms. Carter.

At the next hearing on March 23, 2016, the district court informed the parties that it could not appoint new counsel (because Ms. Carter had retained counsel), and Ms. Copeland orally resubmitted Ms. Carter's motion to withdraw her guilty plea. The district court heard from Ms. Copeland, Mr. Hardin, and the government. Mr. Hardin stated that he went over the plea agreement "line by line" and that Ms. Copeland was privy to his decisions. The government argued that, as a result of Mr. Hardin's efforts, it had dismissed three charges and Ms. Carter was no longer subject to certain statutory penalties. The district court did not decide on the motion during this hearing and gave Ms. Copeland two weeks to prepare further.

On April 11, 2016, Ms. Carter filed a motion to rescind the plea agreement, arguing that there was no meeting of the minds, that the plea agreement contained mistakes and ambiguities that misled her into believing she was agreeing to a 5-year sentence, and that the government should have to specifically perform the

5

agreement. The motion also included an argument that Mr. Hardin provided ineffective assistance of counsel.[1]

On April 13, 2016, the district court held another hearing where it heard from Ms. Copeland, Mr. Hardin, and the government about the plea process and the pending motions.  Mr. Hardin testified that he spoke to Ms. Carter on the phone about the plea agreement, explained the correct cocaine amounts to her even though the plea agreement referenced an improper range, and had told her to tell the district court if she was confused during the colloquy.  The government agreed with Mr. Hardin that the reference to the improper cocaine range in the agreement was a typographical error.

At the hearing, the district court denied both of Ms. Carter's motions and found that Mr. Hardin did not provide ineffective assistance.  It found that the agreement did not state that Ms. Carter would receive a 5-year sentence; there was no evidence to contradict that the parties negotiated a cocaine range of 50 to 150 kilograms; and there was no evidence that Ms. Carter's testimony at her plea colloquy was tainted by Mr. Hardin's representation and advice.  The district court

---

[1] Ms. Carter claimed that: (1) the phrase "a maximum sentence of not less than five (5) years imprisonment" could reasonably be interpreted to mean the sentence could not exceed five years; (2) the government's dismissal of three counts against Ms. Carter was an illusory promise because the charging document only included one count; and, (3) there was confusion about whether Ms. Carter pled guilty with relation to 5 to 15 kilograms or 50 to 150 kilograms of cocaine, which resulted in a difference in base level offense calculations.  These are the same arguments raised on appeal.

then sentenced Ms. Carter to 155 months' imprisonment, 5 years of supervised release, and a $100 assessment.

## II

Ms. Carter raises four arguments on appeal: (1) the district court abused its discretion in denying her motion to withdraw her guilty plea; (2) the district court abused its discretion in denying her motion to rescind her plea agreement; (3) she received ineffective assistance of counsel; and (4) the district court improperly commented on the plea agreement.

## A

Ms. Carter first argues the district court abused its discretion in denying her motion to withdraw the plea because her plea was not knowing and voluntary due to her counsel's ineffectiveness. She concedes that she was not coerced to enter the plea, that the district court completed a sufficient plea colloquy under Rule 11, and that her answers at the plea colloquy are presumed truthful. She argues, however, that she was misled by Mr. Hardin to believe she would receive a 5-year sentence and that her request for a copy of her plea agreement weeks after entering her plea was an indication of her confusion. She also argues that the government would not be prejudiced by withdrawal and that more judicial resources would be spent if she were to bring an ineffective assistance of counsel claim under 28 U.S.C. § 2255.

We review Ms. Carter's challenge to the district court's denial of her motion to withdraw a guilty plea for abuse of discretion. *See United States v. Freixas*, 332 F.3d 1314, 1316 (11th Cir. 2003). We will reverse only if the district court's decision was arbitrary or unreasonable. *See id.* at 1318.

A defendant may withdraw her guilty plea after the court accepts the plea, but before a sentence is imposed, if she "can show a fair and just reason for requesting the withdrawal." *See* Fed. R. Crim. P. 11(d)(2)(B). The defendant has the burden of showing a "fair and just reason" for withdrawal, and does not have an absolute right to withdraw a guilty plea prior to the imposition of a sentence. *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988). The credibility and weight of a defendant's assertions in support of a motion to withdraw a guilty plea are for the district court to decide. *See id.* at 472.

In determining whether a defendant has met his or her burden, a district court may consider the totality of circumstances and particular factors, such as (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant would be allowed to withdraw the plea. *See id.* at 471–72. A "swift change of heart" is a strong indication that a plea was entered in "haste and confusion." *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987) (internal citations omitted).

8

We conclude that the district court did not abuse its discretion in denying Ms. Carter's motion to withdraw her guilty plea. Although there was no evidence offered to refute Ms. Carter's contention that she did not receive a copy of her plea agreement before the plea colloquy, Ms. Carter stated under oath in open court that she understood the plea agreement, had read "every word" of it, and most importantly, that she understood the range of penalties she was facing. There is a strong presumption that the responses she gave at the plea colloquy were truthful. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). At no point during the plea colloquy did she say she thought she would receive a 5-year sentence, and although we recognize the immense pressure a defendant faces when entering a guilty plea, we cannot ignore Ms. Carter's own testimony that she recognized that she could not rely on any estimate provided to her. *See United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (holding that the district court did not abuse its discretion when it denied the defendant's motion to withdraw his guilty plea even though the defendant thought he would receive a different sentence based on his attorney's erroneous estimate).

The district court held multiple hearings on Ms. Carter's motion, reviewed the evidence presented, and heard from all parties involved. Although the district court stated that it was concerned about the performance of counsel, it ultimately found that Ms. Carter knowingly and voluntarily entered into her plea. Based on

9

the record below and the parties' briefs, we affirm the district court's denial of Ms. Carter's motion to withdraw her guilty plea.

**B**

Ms. Carter's second argument is that the district court abused its discretion when it denied the motion to rescind the plea agreement. Ms. Carter contends that there was no "meeting of the minds," but the record indicates that the errors in the plea agreement did not mislead Ms. Carter into entering into the agreement. For example, it was only after Ms. Copeland reentered her appearance and noticed the typographical errors that she raised them as a possible reason for Ms. Carter's confusion. The district court, moreover, explained the proper sentence range to Ms. Carter and she agreed that she understood it, despite the typographical errors about drug quantity that were present in the agreement. Although we recognize that the plea agreement is unartfully drafted, the record below reflects that the parties understood the agreement's contents as to statutory penalties and that Ms. Carter did not express any confusion based on the typographical errors to the district court during her plea colloquy.

More importantly, although we agree with Ms. Carter that plea agreements can be interpreted like contracts, *see United States v. Jeffries*, 908 F.2d 1520, 1523 (11th Cir. 1990), Ms. Carter does *not* really want the plea agreement *rescinded*. Rescission is "a party's unilateral unmaking of a contract for a legally sufficient

10

reason." *See* Black's Law Dictionary 1499 (10th Ed. 2009) (defining the term "rescission"). Ms. Carter says as much in her brief. *See* Appellant's Br. at 19 ("A rescission would not place the parties in the position they would have been had there been no contract."). Instead, Ms. Carter would like us to interpret the plea agreement to her benefit. *See* Appellant's Br. at 19, 31. We, however, decline her invitation to do so. We cannot modify the plea agreement entered by the parties to reflect terms that were not agreed upon, and the district court did not err in deciding not to do so. *Cf. United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999) (stating, in a case where the plea agreement was previously accepted by the district court, that the "modification of the terms of a plea agreement [was] . . . beyond the power of the district court."). [2]

## C

Ms. Carter's next argument is that her counsel, Mr. Hardin, was ineffective because he did not communicate with her sufficiently and did not understand the plea agreement. She says that he did not visit her while he represented her, advised her regarding her plea agreement only one hour before the plea hearing, told her she would receive a 5-year sentence, and did not share the PSI or plea agreement with her. [3]

---

[2] Ms. Carter's subsidiary arguments do not support a request for rescission either.

[3] Ms. Carter mentions that the objections Mr. Hardin raised to the PSI were rejected by the probation office because they related to facts Ms. Carter already stipulated to. *See* Appellant's

11

We review Ms. Carter's ineffective assistance of counsel claim *de novo*. *See Freixas*, 332 F.3d at 1316. Although we usually review ineffective assistance of counsel claims on collateral review, the record below is sufficiently developed for our review on direct appeal. *See id*. at 1319 n.3.

To successfully prove ineffective assistance of counsel, a defendant must show that (1) his or her counsel's performance was deficient, and (2) the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel provided adequate assistance and made all significant decisions in the exercise of reasonable professional conduct. *See id*. at 690. To make a showing of deficiency, a defendant must show that counsel made "errors so serious that [he] was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id*. at 687. Prejudice is demonstrated when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In a case involving a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). We do not need to address

Br. at 23–24. It is unclear whether this is being cited as another alleged reason for Mr. Hardin's ineffectiveness, but because all objections to the PSI were ultimately withdrawn, we consider this argument moot.

both prongs if we find that Ms. Carter made an insufficient showing on one. *See Strickland*, 466 U.S. at 697.

Ms. Carter does not offer any reason to upset the district court's conclusion that she did not receive ineffective assistance. Although the district court may have expressed frustration with Ms. Copeland's performance, and although Mr. Hardin could have theoretically spent more time with Ms. Carter, it heard testimony from Mr. Hardin and Ms. Carter, reviewed the evidence provided by Ms. Carter, and ultimately found that Ms. Carter could not demonstrate that she received ineffective assistance from Mr. Hardin. We also note that, during the plea colloquy, Ms. Carter expressed that she was satisfied with the counsel she received and that Mr. Hardin had reviewed the plea agreement with her. Ms. Carter cannot now blame Mr. Hardin for allegedly misleading her when the district court asked her if she understood the parameters of her plea agreement and she answered in the affirmative.

**D**

Ms. Carter's final argument is that the district court committed plain error by referring to the possibility of serving 25 years or life in prison if she withdrew her plea in violation of Rule 11. Ms. Carter argues that that these comments "shook [her] to her very core," and were the motivation behind her decision to proceed with sentencing. *See* Appellant's Br. at 29.

13

Rule 11(c)(1) prohibits a district court from participating in plea agreement discussions. When a defendant fails to object to an alleged violation of Rule 11(c)(1), we review for plain error. *See United States v. Castro*, 736 F.3d 1308, 1313 (11th Cir. 2013). That is the case here because Ms. Carter did not object below. Plain error occurs when the district court commits an error that is "plain, affects the defendant's substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). We evaluate the district court's comments in light of the full record. *Id.* Ms. Carter has to prove that but for the district court's remarks, she would have gone to trial. *See id*.

Here, the district court did not commit plain error by clarifying with counsel that Ms. Carter understood the risks associated with withdrawing her guilty plea. The statements were made after Ms. Carter decided to plead guilty and completed her plea colloquy. Although the district court mentioned the sentence it was contemplating for the first time, it did not interfere or attempt to manage plea discussions post hoc. Ms. Carter, moreover, tells us on appeal that she "still desires to enter a guilty plea." *See* Appellant's Br. at 19. Thus, in light of the record, Ms. Carter has failed to prove she would have proceeded to trial but for the district court's comments.

## IV

For all of the reasons cited above, we affirm the district court's denials of Ms. Carter's motion to withdraw her guilty plea and motion to rescind the plea agreement. We also conclude that Ms. Carter did not receive ineffective assistance of counsel and the district court's comments did not constitute plain error under Rule 11.

**AFFIRMED.**