[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10631

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee,

*versus*

LUCIA ANDREA GATTA,

                                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cr-80019-AMC-1

_____

Before WILLIAM PRYOR, Chief Judge, and KIDD and WILSON, Circuit Judges.

PER CURIAM:

Lucia Gatta appeals the judgment of her convictions and sentence for failure to file tax returns and naturalization fraud. 18 U.S.C. § 1425(a); 26 U.S.C. § 7203. She argues that the district court plainly erred by involving itself in plea negotiations and accepting her unknowing and involuntary plea. She also argues that the district court erred in considering conduct related to unextradited offenses at sentencing. We affirm.

## I. BACKGROUND

A grand jury issued an indictment charging Gatta with failure to file reports of foreign bank and financial accounts from 2012 to 2014, 31 U.S.C. §§ 5314, 5322(a), tax evasion for tax years 2011 to 2014, 26 U.S.C. § 7201, failure to file tax returns from 2011 to 2014, *id.* § 7203, and naturalization fraud, 18 U.S.C. § 1425(a). Italy ordered Gatta extradited to the United States but excluded charges for failure to file reports of foreign bank accounts, tax evasion, and failure to file a tax return in 2014.

During her detention hearing, Gatta's attorney acknowledged "trial's really not an option here. It's going to be whether we accept a plea agreement and plead to the [c]ourt." The government, the magistrate judge, and Gatta's attorney all confirmed that loss of citizenship was a statutory requirement of conviction for naturalization fraud. At the request of the district court, the parties

submitted a report regarding proposed factual proffers after the parties failed to agree about the factual proffer. Gatta asserted she rejected the plea agreement proposed by the government but would plead guilty without an agreement.

At the change of plea hearing, an interpreter translated for Gatta. The district court stated the factual proffer was "very bare bones and provide[d] no factual context . . . ." Gatta argued her factual proffer was sufficient as to the failure to file tax returns because it reflected that she acted willfully, but she stated the district court could amend the proffer. The district court offered, and Gatta accepted without objection, to amend the factual proffer to state she knew she was required to file returns and chose not to do so. As to the naturalization fraud charge, the government asked that Gatta stipulate that her failure to disclose information about her failure to file tax returns was material to granting her naturalization. Gatta agreed to adding language to the factual proffer that the government could have offered testimony that her false statements were causally connected to the decision to grant her naturalization.

Gatta stated under oath that she did not understand the "technical things" but understood she was present to admit guilt. She confirmed she had no physical or mental condition that would prevent her from understanding the proceedings; no one forced, threatened, or coerced her to plead guilty; no promises were made to obtain her plea; and she was pleading guilty because she was guilty. She confirmed she discussed the indictment with her attorney and was satisfied with his representation. The government

recited the elements of the offenses. As to the naturalization fraud charge, the government stated it would have to prove "to the extent [her naturalization] was based on false statements to USCIS, that those false statements were causally connected to her — to the decision to grant her naturalization." Gatta's attorney confirmed the elements were correct. Gatta confirmed she was willing to plead guilty "regardless of any [i]mmigration consequences that [her] guilty plea might entail" including "automatic removal from the United States[.]. Gatta also confirmed that she understood she had the right to plead not guilty and would be giving up certain trial rights, including "the right to remain silent."

Gatta signed her proposed factual basis and confirmed everything in the proffer was true. She stated she understood the factual proffer but not the "technical parts." But she orally confirmed each statement in the factual proffer regarding her failure to file tax returns. As to the naturalization fraud charge, she agreed that she had falsely stated in her naturalization application that she had not previously committed a crime or offense for which she had not been arrested, that she knew she failed to file a return as required by law, and that the government could have offered testimony that her false statements were causally connected to the decision to grant her naturalization.

The district court found there was a sufficient factual basis for each charged offense. Gatta pleaded guilty to failure to file tax returns and naturalization fraud, and the district court accepted her plea. It found she was competent; aware of the charges and

consequences of her plea; entered a knowing and voluntary plea supported by an independent factual basis; and entered her plea with assistance of counsel without force, coercion, or threat.

A probation officer prepared a presentence investigation report. The report stated that Gatta filed incomplete tax returns from 2002 to 2004, failed to file returns from 2005 to 2016, failed to file reports of foreign bank accounts, and took steps to conceal her income and foreign accounts. It also stated that she failed to disclose her failure to file tax returns and failure to file reports of foreign bank accounts in her application for naturalization. The government reported a tax loss from 2003 to 2009 and 2011 to 2016 of $829,935.32. The tax loss for the charges to which she pleaded guilty would have been $304,709.11.

The report calculated a base offense level of 20, United States Sentencing Guidelines Manual §§ 2T1.1(a)(1), 2T4.1(H) (Nov. 2023), based on her failure to file tax returns and a tax loss of $829,935.32, added a 2-level enhancement for sophisticated means, *id.* § 2T1.1(b)(2), and added a 2-level enhancement for obstruction of justice, *id.* § 3C1.1, with an adjusted offense level of 24. Because her naturalization fraud offense did not contribute to her offense level, Gatta received a combined adjusted offense level of 24. As a zero-point offender, Gatta received a two-level downward adjustment, *id.* § 4C1.1(a)-(b), and an additional two-level decrease for acceptance of responsibility, *id.* § 3E1.1(a), with a total offense level of 20. Based on a total offense level of 20 and a criminal-history category of I, Gatta's guideline imprisonment range was 33 to 41

months with a statutory maximum sentence of 1 year for failure to file tax returns and 10 years for naturalization fraud. Gatta objected to the description of her offense conduct, the tax loss calculation, and the sophisticated means enhancement because they were beyond the scope of the extradition order.

At sentencing, the district court denied Gatta's objection because, under *United States v. Utsick*, 45 F.4th 1325 (11th Cir. 2022), consideration of this information would not constitute punishment as to her unextradited charges. The district court calculated the guidelines range and imposed a 36-month sentence of imprisonment, followed by 1 year of supervised release. It stated it would have imposed that sentence regardless of any potential error in the guidelines calculation. Because the government had already moved to revoke Gatta's citizenship based on her naturalization fraud charge, *see* 8 U.S.C. § 1451(e), and Gatta conceded her citizenship would be revoked and contested only the effective date, the district court revoked her citizenship. At the government's request, it dismissed Gatta's unextradited charges.

## II. STANDARDS OF REVIEW

When a defendant fails to object to a violation of Federal Rule of Criminal Procedure 11 in the district court, we review for plain error. *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003). And due process claims raised for the first time on appeal are reviewed for plain error. *United States v. Al Jaberi*, 97 F.4th 1310, 1327 (11th Cir. 2024). Under this standard, the defendant has the burden to establish that there is an error that is plain; affects

substantial rights; and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Monroe*, 353 F.3d at 1349. We review *de novo* whether a sentence violated the defendant's extradition order. *Utsick*, 45 F.4th at 1332.

### III. DISCUSSION

We divide our discussion into three parts. First, we explain that the district court did not plainly err by impermissibly involving itself in plea negotiations or by failing to advise Gatta of her right to remain silent before obtaining admissions regarding her factual proffer. Second, we explain that the district court did not plainly err by accepting her guilty plea. Third, we explain that the district court did not err in considering conduct regarding unextradited charges at sentencing.

*A. The District Court Did Not Plainly Err by Impermissibly Involving Itself in Plea Negotiations.*

The district court did not plainly err by impermissibly involving itself in plea negotiations. Under Rule 11(c)(1), the district court must not participate in discussions to reach a plea agreement. Fed. R. Crim. P. 11(c)(1). "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Curtin*, 78 F.4th 1299, 1310 (11th Cir. 2023) (citation and internal quotation marks omitted), *cert. denied*, 144 S. Ct. 595 (2024). When a defendant does not raise error under Rule 11(c)(1) in the district court, we consider, looking at the full record,

"whether it was reasonably probable that, but for the . . . exhortations of the district court, the defendant would have exercised his right to go to trial." *United States v. Castro*, 736 F.3d 1308, 1313–14 (11th Cir. 2013) (citation and internal quotation marks omitted, alterations adopted). In *Castro*, we held a district court's participation in plea discussions did not affect Castro's substantial rights because he failed to establish that he would not have pleaded guilty but for the district court's involvement. *Id.* at 1314–15. We reasoned that in his signed plea agreement and oral colloquy, Castro stated he had not been pressured or forced to plead guilty, the district court stated he was allowed to persist in a not guilty plea, and it was equally plausible he decided to plead guilty to receive a shorter sentence. *Id.*

Gatta did not object to the district court's participation in crafting the factual basis for her plea, so we review this claim for plain error. *See Monroe*, 353 F.3d at 1349. Even if we assume the district court plainly erred by crafting the factual basis for her plea, Gatta has not established that any error affected her substantial rights. *See Castro*, 736 F.3d at 1313. Gatta stated she intended to plead guilty at her detention hearing and in her report to the district court before it made comments about her factual proffer. On appeal, she fails to explain how the district court's comments regarding her factual proffer affected her decision to plead guilty. She signed her factual proffer, affirmed in court that no one coerced her to plead guilty, and was warned that she was entitled to persist in her not-guilty plea. *See id.* at 1314. Even if it is possible that Gatta agreed to the factual basis and pleaded guilty based on perceived

pressure from the district court, because the effect is "uncertain or indeterminate," she cannot prove "that the result would have been different but for the error." *Id.* at 1315 (citation and internal quotation marks omitted).

And the district court did not plainly err by failing to warn Gatta of her right to remain silent before soliciting factual admissions. Rule 11(b) requires that the district court inform the defendant, among other rights, of her right against self-incrimination before accepting her guilty plea. Fed. R. Crim. P. 11(b)(1)(E). Gatta was advised of this right after the district court discussed the factual proffer, and nothing in the rule requires that warning to be given in any particular order. Gatta points to no binding authority establishing that the district court was required to advise her of her right to remain silent before discussing the sufficiency of the factual proffer. *See Curtin*, 78 F.4th at 1310. *Dohm* is distinguishable because there we held the district court plainly erred in ruling Dohm knowingly and voluntarily waived his right against self-incrimination by explaining this right in a misleading way at a bail hearing when Dohm did not have counsel. *United States v. Dohm*, 618 F.2d 1169, 1175 (5th Cir. 1980) (en banc). Gatta had counsel, and the district court described her right to remain silent clearly. Gatta has not established that any error in discussing the factual basis for her plea before informing her of her right to remain silent was plain.

*B. The District Court Did Not Plainly Err by Accepting Gatta's Guilty Plea.*

The district court did not plainly err by accepting Gatta's guilty plea. Gatta did not object that the district court failed to comply with Rule 11, so we review her arguments for plain error. *See Monroe*, 353 F.3d at 1349. To ensure that guilty pleas are knowing and voluntary, "Rule 11(b) sets out procedures that district courts must follow when accepting guilty pleas." *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018). These procedures address three "core objectives": that the plea is free from coercion, that the defendant understands the nature of the charges, and that she understands the consequences of her plea. *Id.* We will uphold plea colloquies that fail to address an item in Rule 11 so long as the district court adequately addresses these core concerns. *Monroe*, 353 F.3d at 1354. Under plain error review, the defendant must establish, considering the record as a whole, "a reasonable probability that, but for the error, [she] would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

Gatta argues that the district court plainly erred by failing to advise her that mandatory denaturalization was a consequence of her guilty plea and would affect her sentence. Rule 11(b)(1) addresses the consequences for pleading guilty, including that a defendant who is not a United States citizen may be removed, denied citizenship, and denied admission in the future. Fed. R. Crim. P. 11(b)(1)(O). Although Gatta argues that the convergence of two provisions in Rule 11 regarding mandatory minimum penalties, *id.* R. 11(b)(1)(I), and immigration consequences, *id.* R. 11(b)(1)(O),

require the district court to advise her that denaturalization was mandatory, Rule 11 does not expressly require such a warning. In fact, the Advisory Committee notes state that the district court is required "to include a general statement that there may be immigration consequences of conviction in the advice provided to the defendant before the court accepts a plea of guilty," but do not require "specific advice concerning the defendant's individual situation." *Id.*, Advisory Committee Notes, 2013 Amendments. The district court provided this general warning, so it did not plainly err. And because Gatta acknowledged she would lose her citizenship both at her detention hearing and after entering her plea, she cannot prove that she would not have pleaded guilty but for any alleged error. *See Dominguez Benitez*, 542 U.S. at 83.

Gatta argues the district court plainly erred by failing to explain the materiality element of her naturalization fraud offense. What is required to advise a defendant of the nature of the charges "varies from case to case depending on the complexity of the charges and the defendant's intelligence and sophistication." *Presendieu*, 880 F.3d at 1238. To prove a defendant knowingly procured naturalization by false statement, 18 U.S.C. § 1425(a), the government must prove "that the defendant lied about facts that would have mattered to an immigration official, because they would have justified denying naturalization or would predictably have led to other facts warranting that result." *Maslenjak v. United States*, 582 U.S. 335, 338 (2017). The parties extensively discussed the materiality element, and Gatta's attorney agreed to and confirmed that language stating that her false statements were causally connected

to the decision to grant her naturalization was correct. Gatta reviewed and signed her proposed factual proffer outlining this element. Even though she argues there was a language barrier, she had an interpreter, received a copy of the indictment, and fully discussed the charges with her attorney. And Gatta points to no decision stating that the charges were particularly complex such that any error could be plain. *See Curtin*, 78 F.4th at 1310.

Gatta also argues that the district court failed to ensure there was a factual basis for the naturalization fraud offense because the district court failed to elicit what prior crimes she failed to disclose when she applied for citizenship. Rule 11 requires the district court to determine that a guilty plea is supported by a sufficient factual basis. Fed. R. Crim. P. 11(b)(3). "A factual basis for the plea simply means that there must be evidence from which a court could reasonably find that the defendant was guilty, and uncontroverted evidence of guilt is not required." *United States v. Rodriguez*, 751 F.3d 1244, 1255 (11th Cir. 2014) (citation and internal quotation marks omitted). Gatta stipulated that she knew she had failed to file a tax return as required by law when she falsely stated she had not committed a crime for which she had not been arrested. She also agreed that her statements regarding her failure to file a tax return were causally connected to the decision to grant her naturalization. The district court ensured there was a sufficient factual basis.

### C. The District Court Did Not Err in Considering Conduct Related to Unextradited Charges at Sentencing.

The district court did not err in considering conduct related to unextradited charges at sentencing. Under the rule of specialty, a state that requests the extradition of an individual "can prosecute that person only for the offense for which he or she was surrendered by the requested state . . . ." *Utsick*, 45 F.4th at 1333 (citation and internal quotation marks omitted). In *Utsick*, we held that "while the rule of specialty bars proof of other crimes in order to exact punishment for those other crimes, it does not bar proof of other crimes as a matter germane to the determination of punishment for the extradited crime." *Id*. at 1335 (citation and internal quotation marks omitted). *Utsick* forecloses Gatta's argument because the district court considered conduct related to unextradited offenses only when imposing a sentence for her extradited offenses.

Gatta's attempts to distinguish *Utsick* fail. Gatta argues that Italy expressly refused extradition for offenses involving conduct that was later introduced at her sentencing. But in *Utsick*, Brazil expressly refused Utsick's extradition as to one count, and we affirmed the consideration of his entire course of conduct. *See id*. at 1329, 1333–36. Gatta also argues that in *Utsick*, Brazil expressly contemplated the conduct that was later considered at sentencing. But Italy was also aware of Gatta's conduct that was considered at sentencing because her indictment for failure to file tax returns and naturalization fraud incorporated facts regarding her attempt to conceal income from 2004 to 2014 and submission of misleading

documents regarding her foreign bank accounts and income from 2006 to 2010.

## IV. CONCLUSION

We **AFFIRM** Gatta's convictions and sentences.