[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10271

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LOREN DAVID READ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cr-00082-WWB-GJK-1

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and ED CARNES, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether an appeal waiver bars a defendant from challenging the constitutionality of the oral pronouncement of his sentence. Loren Read agreed to plead guilty to attempting to entice a minor to engage in sexual activity. In his plea agreement, Read waived his right to appeal his sentence with three exceptions, including one exception for where the sentence exceeds the statutory maximum. At sentencing, the district court told Read that he must follow the standard discretionary conditions of supervised release for the district court during his five-year term. But the district court did not describe those conditions in detail. Read's written judgment included 13 conditions that matched both the standard conditions under the Sentencing Guidelines and the conditions listed on the criminal judgment form found on the district website. Read argues that the oral pronouncement violated his right to due process because it failed to describe the 13 conditions in detail. We grant the government's motion to dismiss based on the appeal waiver.

## I. BACKGROUND

A grand jury indicted Loren Read for attempting to entice a minor to engage in sexual activity. *See* 18 U.S.C. § 2422(b). Read had exchanged online messages with an undercover federal agent posing as the father of nine- and eleven-year-old girls. After Read expressed his desire to perform oral sex on the girls, he agreed to

meet the undercover agent after the girls finished dance class one evening. Read expressed excitement to see them in their leotards and asked to shower with them. After he arrived for the meeting, Read approached an undercover agent posing as the father and offered him a bag of candy for the girls. Agents arrested Read and found three condoms in his pocket.

Read agreed to plead guilty. In exchange, the government agreed not to charge Read with any other known offenses and to recommend that he receive downward adjustments to his offense level for accepting responsibility under the Sentencing Guidelines. Read also agreed to waive his "right to appeal [his] sentence on any ground, including the ground that the [district court] erred in determining the applicable guidelines range." The waiver provided three exceptions that would permit Read to appeal: his sentence exceeded the guideline range that the district court determined, "exceed[ed] the statutory maximum penalty," or violated the Eighth Amendment. If the government appealed, Read would be released from the waiver.

At the change of plea hearing, the district court told Read that a conviction under section 2422(b) required a minimum five-year term of supervised release after imprisonment. Read stated that he understood that he could be imprisoned if he violated the "terms and conditions of that supervised release." The district court did not elaborate on those terms and conditions. The district court discussed the details of the plea agreement with Read and

asked him whether he understood that he "expressly waive[d] the right to appeal [his] sentence." Read responded, "Yes."

The Probation Office prepared a presentence investigation report, which did not recommend any specific conditions of supervised release. Nor did it mention standard discretionary or mandatory conditions of supervised release. But it provided notice that Read's background and offense may warrant the imposition of special conditions.

The district court sentenced Read to 180 months of imprisonment followed by five years of supervised release. Read's guideline range was 210 months to 262 months of imprisonment followed by a term of supervised release of five years to life. The district court varied downward when it sentenced Read to 180 months. For the five years of supervised release, the district court imposed seven special conditions that it described. And it imposed "the mandatory and standard conditions adopted by the Court in the Middle District of Florida." The district court did not describe those conditions. When the district court asked if there were objections to the sentence or the way it was pronounced, Read's attorney responded, "No."

The district court's written judgment contained 13 discretionary "standard conditions" of supervised release. Those 13 conditions matched the standard conditions on the criminal judgment form found on the website of the Middle District of Florida. *See Form AO 245B Judgment in a Criminal Case*, U.S. DIST. CT. FOR THE MIDDLE DIST. OF FLA., at 6, https://perma.cc/5PHV-Q76Q (last

visited Oct. 2, 2024). The form was last revised more than two years before the district court sentenced Read. The 13 conditions also matched the standard conditions in the Sentencing Guidelines. *See* United States Sentencing Guidelines Manual § 5B1.3(c) (Nov. 2023).

## II. STANDARD OF REVIEW

We review *de novo* the scope of an appeal waiver. *Rudolph v. United States*, 92 F.4th 1038, 1043 (11th Cir. 2024).

## III. DISCUSSION

Read appeals the imposition of the discretionary "standard conditions" on the ground that the district court violated his right to due process when it failed to describe each condition during its oral pronouncement of his sentence. The government moves to dismiss based on Read's appeal waiver. Because Read waived his right to appeal, we grant that motion.

A defendant may knowingly and voluntarily waive his right to appeal his sentence. *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). A plea agreement that includes an appeal waiver is like a contract between the government and the defendant. *King v. United States*, 41 F.4th 1363, 1367 (11th Cir. 2022). Appeal waivers bar not only "frivolous claims" but also "difficult and debatable legal issues." *Id.* (citation and internal quotation marks omitted). A defendant who waives his right to appeal "gives up even the right to appeal blatant error[] because the waiver would be nearly meaningless if it included only those appeals that border on the frivolous." *Id.* (citation and internal quotation marks omitted).

Although we carried the government's motion with the appeal and rule on it now, that practice "is not the best thing to do." *United States v. Lewis*, 928 F.3d 980, 985 (11th Cir. 2019). Carrying a motion to dismiss based on an appeal waiver "deprives the government of the benefit that it has bargained for and obtained in the plea agreement." *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997). Requiring the government to file a brief even though there is an appeal waiver also harms defendants generally by devaluing a chip that they can use in negotiating a bargain with the government. *Id.* "Where the appeal is due to be dismissed, sooner is better than later." *Id.* at 1008–09.

As with contracts, we interpret appeal waivers "consistent with the parties' intent." *United States v. Hardman*, 778 F.3d 896, 900 (11th Cir. 2014). We give the language of the agreement its "ordinary and natural meaning unless the parties indicate otherwise." *Id.* This objective standard avoids a "hyper-technical reading of the written agreement" and a "rigidly literal approach in the construction of the language." *Id.* (citation and internal quotation marks omitted).

Read makes two arguments. First, Read argues that the waiver does not apply because he seeks only to correct the written judgment to match the oral pronouncement. Second, Read argues, in the alternative, that his appeal fits within the exception for an appeal of a sentence that "exceeds the statutory maximum penalty." Both arguments fail.

### A. Read Appeals His Sentence.

Read argues that he does not appeal his sentence because he seeks correction of the written judgment, which is not a sentence. A defendant may seek to correct a written judgment when there is a conflict between it and the oral pronouncement. *E.g., United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000) (remanding for correction of written judgment that conflicted with oral pronouncement). But Read seeks more than correction of the written judgment.

Read's appeal challenges the constitutionality of his sentence. He argues that the district court violated his right to due process when it imposed his sentence without describing the standard conditions. The Due Process Clause of the Fifth Amendment requires that a defendant receive notice of and an opportunity to object to his sentence. *United States v. Rodriguez*, 75 F.4th 1231, 1247 (11th Cir. 2023). This requirement derives from the right to be present at "critical stage[s] of [criminal] proceedings," including during the imposition of sentence. *United States v. Huff*, 512 F.2d 66, 71 (5th Cir. 1975); *accord United States v. Jackson*, 923 F.2d 1494, 1496 (11th Cir. 1991). Read's procedural challenge to the imposition of his sentence is an appeal of his sentence, which falls within the scope of his appeal waiver.

A district court must orally pronounce any discretionary conditions of supervised release at sentencing. *Rodriguez*, 75 F.4th at 1246. It satisfies this requirement when it orally "referenc[es] a written list of supervised release conditions," such as from the

presentence investigation report or in a "standing administrative order." *Id.* The written judgment may explicate details of conditions referenced during the oral pronouncement at sentencing if those details are established elsewhere. *See id.* at 1249. When the district court includes discretionary conditions in the written judgment that it did not reference at the sentencing hearing, we vacate the conditions and remand for resentencing. *Id.*

Concerns about due process arise when a sentence in the written judgment conflicts with the oral pronouncement. *Id.* at 1247. A district court ordinarily "cannot add to the defendant's sentence in a written judgment entered after the sentencing hearing" because doing so would impose a sentence outside the defendant's presence. *Id.* at 1246–47. So the district court may correct a written judgment that "unambiguously conflicts" with the oral pronouncement to mitigate any constitutional problem. *See Bates*, 213 F.3d at 1340; FED. R. CRIM. P. 36 (permitting correction of "clerical error[s]" in the written judgment).

Although Read contends that he seeks correction of the written judgment, the power to correct the written judgment is limited under Rule 36. *See United States v. Portillo*, 363 F.3d 1161, 1164–65 (11th Cir. 2004). That power does not permit "substantive alteration to a criminal sentence." *Id.* at 1164 (citation and internal quotation marks omitted). Courts may determine only whether the judgment contains "clerical mistakes": "minor, uncontroversial errors." *Id.* (citation and internal quotation marks omitted). If during our review we determine there is a clerical error, we remand with

instructions for the district court to correct the judgment. *Bates*, 213 F.3d at 1340.

Read does not seek correction of the written judgment because he does not argue that the written judgment conflicts with the oral pronouncement at sentencing. As Read acknowledges, the district court explained at sentencing that he must comply with "the mandatory and standard conditions adopted by the Court in the Middle District of Florida" during his supervised release. And in its written order, it explained those conditions in detail. So there is no discrepancy between the oral pronouncement and the written judgment. The latter only expounds the former.

Instead of seeking correction of the written judgment, Read challenges the way the district court imposed his sentence. That is, Read argues that the district court failed to describe each standard condition that it imposed. Read argues that this omission "violated [his] due process rights to notice and an opportunity to be heard." He argues that the district court should have "expressly incorporated or pronounced" each of the conditions at sentencing because they are not contained in a "standing administrative order."

If Read sought correction of the judgment, we would remand with instructions for the district court to amend the judgment to match the oral pronouncement. *See id.* But there is no mismatch between the written judgment and the oral pronouncement; the written judgment only adds details to the oral pronouncement. If we issued that mandate, Read would not get what he wants: a mandate to amend the judgment to match the oral

pronouncement would result in a judgment that Read is subject to "the mandatory and standard conditions adopted by the Court in the Middle District of Florida."

Read cites decisions from the Fourth and Seventh Circuits, but both are inapposite. In *United States v. Singletary*, the Fourth Circuit ruled that a waiver of the right to appeal "whatever sentence is imposed" did not bar a challenge to two conditions contained in the judgment that the district court did not mention at sentencing. 984 F.3d 341, 343, 345 (4th Cir. 2021) (emphasis and internal quotation marks omitted). The defendant's argument was that the "conditions appearing for the first time in [the] written judgment in fact have *not* been 'imposed.'" *Id*. at 345. And in *United States v. Harris*, the Seventh Circuit ruled that a defendant's waiver of his right to appeal his sentence or the way it "was determined or imposed" did not bar him from seeking correction of a discrepancy between the pronouncement and judgment. 51 F.4th 705, 719–21 (7th Cir. 2022) (internal quotation marks omitted). The defendant argued that the district court orally sentenced him to two years of supervised release, but the judgment provided a term of five years. *Id*. at 719. The Seventh Circuit ruled that the "unambiguous oral pronouncement—not the written judgment—is the defendant's actual sentence," and a challenge to a discrepancy between the two does not challenge the actual sentence. *Id*. at 720 (citation and internal quotation marks omitted).

Read's appeal, in contrast, mirrors one that the Fifth Circuit concluded was waived by a plea agreement. In *United States v.*

*Higgins*, the Fifth Circuit ruled that a written waiver, like Read's, barred an appeal in which the defendant, like Read, argued that the judgment contained details about the conditions of his supervised release that the district court failed to mention at sentencing. *See* 739 F.3d 733, 736–39 (5th Cir. 2014). The Fifth Circuit rejected the defendant's argument that, because only the oral pronouncement is the sentence, he did not challenge his sentence. *Id.* at 737–38. It explained that, although an unambiguous pronouncement controls where there is conflict, that rule "does not speak to whether a conflict between the two sentences constitutes an appeal of the sentence for purposes of waiver." *Id.* at 738. The Fifth Circuit concluded that the defendant appealed his sentence. *Id.* at 739.

Because Read does not seek correction of the written judgment, we need not and do not decide whether the written judgment or the oral pronouncement is the sentence. The Fourth, Fifth, and Seventh Circuits decided that question and reached different conclusions. *Compare Singletary*, 984 F.3d at 345 (concluding that a challenge to conditions contained in the judgment but not mentioned at sentencing did not challenge the sentence and instead "made the more elementary contention" that the conditions "were not part of [the defendant's] sentence at all" (citation and internal quotation marks omitted)), *and Harris*, 51 F.4th at 720 (concluding that the "oral pronouncement is the real sentence"), *with Higgins*, 739 F.3d at 737–38 (rejecting the argument that only the oral pronouncement is the sentence). Read challenges the sufficiency of the oral pronouncement of his sentence, which means that he challenges his sentence regardless of its form.

### B. Read Does Not Argue that His Sentence Exceeds the Statutory Maximum.

Read argues alternatively that the exception to his appeal waiver for a sentence that "exceeds the statutory maximum penalty" applies because the "written judgment imposed a penalty that was not authorized by law." But we disagree. Read does not argue that the 13 conditions violate the statutory requirements for supervised release. *See* 18 U.S.C. § 3583(d); *Higgins*, 739 F.3d at 739 (concluding that a similar exception did not apply because the defendant "put[] forth no argument" that the conditions "violate[d] the[] statutory limitations in a way that constitute[d] a punishment in excess of the statutory maximum"). Read argues instead that he did not receive notice of or an opportunity to object to the details of his standard conditions of supervised release. So the exception does not apply.

## IV. CONCLUSION

We grant the government's motion to **DISMISS** Read's appeal.