[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 22-11622

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ERIC ALONZO WINDHAM,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cr-00079-KD-B-2

————————————

Before BRASHER, ABUDU, and MARCUS, Circuit Judges.

PER CURIAM:

Eric Alonzo Windham appeals his conviction and 120-month sentence for one count of conspiracy to possess with the intent to distribute more than five kilograms of cocaine. On appeal, Windham argues that: (1) the district court plainly erred when it impermissibly participated in plea negotiations in his first plea hearing in violation of Federal Rule of Criminal Procedure 11(c)(1), which tainted his second plea hearing; (2) the court plainly erred when it found that his guilty plea was knowing and voluntary because the court and government mistakenly informed him that he was eligible for safety valve relief; (3) the court erred when it denied his motion to suppress; and (4) the court failed to pronounce the discretionary conditions of his supervised release at his sentencing that it included in his written judgment. After thorough review, we affirm.

**I.**

When a defendant fails to object to a Rule 11 violation in the district court, we review for plain error. *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003). Under plain-error review, the defendant has the burden of showing there is: (1) error; (2) that is plain; and (3) that affects his substantial rights. *Id.* If all three conditions are met, then we may exercise our discretion to notice a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* "An error

is plain when it contradicts precedent from the Supreme Court or our Court directly resolving the issue." *United States v. Cruickshank*, 837 F.3d 1182, 1191 (11th Cir. 2016). On plain-error review, the defendant "faces a daunting obstacle" in establishing that his substantial rights were affected, and we will review the whole record when considering the effect of any error on the defendant's substantial rights. *United States v. Castro*, 736 F.3d 1308, 1313–14 (11th Cir. 2013) (quotations omitted); *Monroe*, 353 F.3d at 1350.

We review *de novo* whether a defendant's guilty plea has waived his ability to appeal the district court's ruling on a particular pre-trial motion. *United States v. Patti*, 337 F.3d 1317, 1320 n.4 (11th Cir. 2003). We also review the validity of a sentence appeal waiver *de novo*. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). A holding by a prior panel of this Court is binding on all subsequent panels "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*." *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) (quotations omitted).

## II.

First, we are unpersuaded by Windham's claim that the district court plainly erred by impermissibly participating in his plea negotiations. Under the Federal Rules of Criminal Procedure, parties are allowed to engage in discussions in order to resolve a criminal matter short of trial, but the district court must not participate in any discussions between the parties concerning any plea agreement. Fed. R. Crim. P. 11(c)(1). The prohibition is grounded on

the policy that a sentencing judge should take no part in any discussion or communication, prior to the parties' submission of the plea agreement, about the sentence to be imposed. *United States v. Corbitt*, 996 F.2d 1132, 1134 (11th Cir. 1993) (*per curiam*), *abrogated on other grounds by United States v. Davila*, 569 U.S. 597, 610–11 (2013). Three rationales underpin the strict prohibition on judicial participation in plea discussions: (1) judicial involvement in plea negotiations inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty; (2) the prohibition protects the integrity of the judicial process; and (3) the ban preserves the judge's impartiality after the negotiations are completed. *United States v. Casallas*, 59 F.3d 1173, 1178 (11th Cir. 1995) (quotations and citations omitted), *abrogated on other grounds by Davila*, 569 U.S. at 610–11. The rule admits no exceptions. *Id.* at 1177.

However, we've indicated that post-agreement statements may not violate the prohibition. *See United States v. Telemaque*, 244 F.3d 1247, 1249 (11th Cir. 2001) (*per curiam*) (addressing a district court's statements, which we ultimately concluded were not coercive, made at the change-of-plea hearing after the parties executed a written plea agreement). Further, we've recognized that in certain circumstances, when a defendant has had *two* plea hearings, a "trial judge's comments at the first plea hearing [might] not infect or taint the guilty pleas at the second plea hearing." *Casallas*, 59 F.3d at 1179. In *Casallas*, we concluded that the judge's comments at the first plea hearing had not in fact infected the pleas at the second hearing because: (1) the transcript of the second hearing,

which was held one month after the initial plea hearing, revealed no prohibited participation by the district court judge whatsoever; and (2) the district court judge's comments at the first hearing "were clearly intended to apprise the defendant of his situation and to contrast the options that he faced," "were factual and intended to convey information that defendant should have received, and perhaps did receive, from counsel," and "were non-threatening and could not have been objectively viewed as a threat by any reasonable defendant." *Id.*

In addition, when a defendant fails to argue in district court that the court improperly participated in his plea discussions, he must satisfy all four prongs of the plain error test. *Castro*, 736 F.3d at 1313. So even though an error of this kind may be considered "plain" under the first two prongs of the test, the defendant still must satisfy the remainder of the error test -- which includes a showing that, "but for the error [of the district court], he would not have entered the plea." *Id.* at 1314 (quotations omitted). "And that burden is anything but easy to satisfy" because he "must prove that the error made a difference in his decision," which means that "if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses." *Id.* (quotations omitted). "Arguable is not enough to satisfy the third-prong test of prejudice." *Id.* (quotations omitted). Finally, the defendant also must satisfy the fourth prong of plain error, which directs that we may exercise our discretion to notice a forfeited error only if the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Monroe*, 353 F.3d at 1349.

Here, Windham never objected to the district court's inter-jection into his plea negotiations, so we review this claim for plain error, and can find none. *Monroe*, 353 F.3d at 1349. We begin our analysis with comments the district court made, a few times during Windham's initial Rule 11 plea hearing, where Windham disagreed with certain statements in the factual resume and did not end up pleading guilty. At that hearing, the district court told Windham that if he pleaded guilty and truthfully informed the government of everything he knew, he could be eligible to be sentenced below the statutory mandatory minimum based on the "safety valve" pro-vision found in the Guidelines.[1] The court added, however, that if Windham went to the trial, he would not be eligible for safety valve consideration. In making these comments, the district court stressed that it was "not trying to get [Windham] to plea[d]," it "just [wanted] to tell [Windham] what the facts are," and it was "not promising . . . anything," especially since Windham had not been "debriefed and told the truth about what [he] know[s] yet," and much of the court's discussion about the safety valve was in re-sponse to Windham's questions about it. Nevertheless, under our case law, comments like these -- which addressed the sentence that

---

[1] Under U.S.S.G. § 5C1.2(a) -- the "safety valve" provision -- the district court may impose a sentence in accordance with the applicable guidelines without regard to any statutory mandatory minimum sentence, if the court finds that a defendant meets the criteria in 18 U.S.C. § 3553(f)(1)–(5), as set forth in U.S.S.G. § 5C1.2(a)(1)–(5). U.S.S.G. § 5C1.2(a). Safety valve relief is not avail-able where a defendant "possess[ed] a firearm or other dangerous weapon . . . in connection with the offense." *Id.* § 5C1.2(a)(2).

might be imposed if Windham pleaded guilty and potentially encouraged him to plead guilty -- are ones that "cross[] the line into the realm of [improper] participation." *Casallas*, 59 F.3d at 1178.

However, our inquiry does not end there since Windham did *not* plead guilty at that first plea hearing. *Id*. at 1179. In these kinds of situations, we've said that we "now address whether the judge's participatory comments during the initial plea [hearing] . . . tainted [the defendant's] subsequent plea[] before the judge" in the hearing that resulted in the guilty plea he now challenges on appeal. *Id*. As in *Casallas*, although the judge's comments at Windham's first hearing may have been improperly participatory, they were also explanatory, "non-threatening and could not have been objectively viewed as a threat by any reasonable defendant." *Id*. This is supported by the fact that even after receiving the comments, Windham continued to disagree with statements in the factual resume and did not end up pleading guilty at that hearing.

Then, about a week after the initial hearing, Windham signed a plea agreement, which represented that it was a voluntary accord that was not the result of any coercion. *See Castro*, 736 F.3d at 1314 (considering that a defendant "signed another copy of his plea agreement that stated he had not been pressured to plead guilty"). Consistent with this, Windham confirmed during the second hearing that no one had pressured him or forced him to plead guilty. *See id.* (noting that a defendant "verified during an oral colloquy that he had not been forced by 'anyone' to plead guilty"). It's also noteworthy that a different judge presided over Windham's

8                    Opinion of the Court                22-11622

second plea hearing.  *See Davila*, 749 F.3d at 997 (considering the
passage of time and a change in presiding judges as factors that
counted against a determination of prejudice).  Further, as we'll
explain later, the second judge properly went through the Rule 11
colloquy to make sure that Windham's plea was knowing and vol-
untary and that Windham knew that safety valve relief was not
guaranteed.

In these circumstances, the district court's comments at
Windham's first plea hearing did not taint his later plea hearing
where he actually pleaded guilty.  And because our precedent al-
lows us to consider the second judge's comments at the operative
plea hearing, we cannot say that the error, if any, contradicted prec-
edent from this Court or the Supreme Court directly resolving the
issue.  *See Cruickshank*, 837 F.3d at 1191.

Moreover, Windham has not satisfied the next prong of the
plain error test -- that, "but for the error [of the district court], he
would not have entered the plea."  *Castro*, 736 F.3d at 1313 (quota-
tions omitted).  The record plainly reflects that Windham signed a
plea agreement a week after his first plea hearing, and that plea
agreement represented that it was a voluntary accord that was not
the result of any coercion.  Indeed, at that second hearing, Wind-
ham emphatically said: "I'm pleading guilty because I am guilty,"
and reiterated several times that he wanted to get the plea over with
and not go to trial.  Windham has offered nothing from the record
to satisfy the "daunting obstacle" of proving that he would not have
pleaded guilty but for the district court's error at the first plea

hearing. *Id*. at 1313–14 (quotations omitted). As a result, we cannot say that Windham has proven that the district court's erroneous comments at the first plea hearing "made a difference in his decision" to plead guilty at the second hearing, before a different judge. *Id*. Nor, for these same reasons, can we say that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Monroe*, 353 F.3d at 1349. Thus, Windham has not established that the district court plainly erred by participating in his plea negotiations.

**III.**

We similarly find no merit to Windham's claim that the court plainly erred when it found that his guilty plea was knowing and voluntary. Under Rule 11, before a court can accept a guilty plea, it must inform the defendant of his rights should he plead not guilty, the nature of the charges against him, the potential penalties, and the court's obligation to calculate his advisory guideline range. *See* Fed. R. Crim. P. 11(b)(1)(B)-(E), (G)-(M). The court must also explain that a guilty plea waives the defendant's trial rights and ensure that the plea is entered voluntarily and is supported by a sufficient factual basis. *See* Fed. R. Crim. P. 11(b)(1)(F), (b)(2)-(3). Further, the court must explain that the defendant can be prosecuted for perjury for testifying falsely under oath. *See* Fed. R. Crim. P. 11(b)(1)(A).

"[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but

for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). In evaluating whether a Rule 11 error has substantially affected a defendant's rights, we have examined Rule 11's three "core principles," which are ensuring that: (1) the guilty plea is free of coercion; (2) the defendant understands the nature of the charges against him; and (3) the defendant understands the direct consequences of the guilty plea. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).

As for the first core principle, Rule 11(b)(2) elaborates that the court must ensure that the plea did not result from force, threats, or promises not included in the plea agreement. Fed. R. Crim. P. 11(b)(2). Whether the court has complied with the second core principle depends on a variety of factors, including the complexity of the offense and the defendant's intelligence and education. *Telemaque*, 244 F.3d at 1249. To comply with the third core principle, the district court must inform the defendant of the rights that he gives up by pleading guilty, the court's authority to impose certain punishments, and the possibility of a perjury prosecution for false statements during the plea colloquy. *Moriarty*, 429 F.3d at 1019; *see also* Fed. R. Crim. P. 11(b)(1).

Where a defendant fails to object to his plea before the district court, failure to strictly comply with Rule 11 does not necessarily implicate a core concern, nor does it require reversal if no prejudice is shown. *Monroe*, 353 F.3d at 1356. Thus, in general, complete or near-complete failures to address a core concern might be reversible, whereas a "slip up" in which the district

22-11622                Opinion of the Court                11

court forgets to explicitly cover an item in Rule 11, but otherwise adequately addresses the core concerns, will not be a basis for remand. *See id.* at 1355–56 & n.12. In addition, information omitted from the plea colloquy also does not generally amount to reversible plain error if it is nonetheless contained in a plea agreement that the defendant admits at the hearing to having read and understood. *See Dominguez Benitez*, 542 U.S. at 85; *United States v. Clark*, 274 F.3d 1325, 1330 (11th Cir. 2001) (holding that no plain error occurred in the district court's failure to advise of a minimum sentence because the plea agreement, from which the court recited during the plea hearing, contained that information).

Here, Windham never objected to the district court's acceptance of his guilty plea, so we also review his claim that his plea was not knowing and voluntary for plain error, and can find none. *Monroe*, 353 F.3d at 1349. As the record reflects, the Rule 11 colloquy conducted at his second plea hearing and the plea agreement taken together show that his actual guilty plea at his second plea hearing was knowing and voluntary. At that hearing, the district court assured that Windham's guilty plea was free from coercion and that he was not pleading guilty because of what anyone had promised him. Windham stated under oath that he agreed with and understood the terms of his plea agreement and the factual resume. The court also confirmed that Windham understood the nature of the charge against him. Windham verified that he was not under the influence of drugs or alcohol, nor that his mental health conditions impacted his ability to understand the proceedings. The court explained the nature and elements of the charges

against him and confirmed that he understood. Windham also confirmed that the statement of facts accurately described his actions and demonstrated that he had committed the offense charged by the government, and the court further confirmed that Windham understood the consequences of his guilty plea.

On this record, which shows that the court expressly addressed the Rule 11 requirements and the core principles of Rule 11, we cannot say that the court erred, much less plainly erred in finding that Windham's plea was knowing and voluntary. Moreover, to the extent Windham argues that the district court plainly erred by not expressly informing him that he could be prosecuted for perjury for answering questions falsely, we disagree. The record reveals that the court placed him under oath, the plea agreement notified Windham that he could be prosecuted for perjury for answering questions falsely, and Windham expressed his guilt without qualification both at the second plea hearing and within the plea agreement, so there is no basis to conclude that the error affected his substantial rights. *Dominguez Benitez*, 542 U.S. at 85.

As for Windham's knowledge about his safety valve eligibility, the court at the second plea hearing did not tell Windham that he was eligible for it. Rather, the hearing began with Windham telling the court that he agreed with the statements in the factual resume and he was voluntarily pleading guilty. The court then confirmed that Windham knew that it would "not be able to determine an appropriate sentence for [his] case until after the presentence report has been completed," "[t]he sentence imposed might

22-11622                Opinion of the Court                13

be different from any estimate [his] attorney or anyone else may have given" him, and "the judge has the authority to impose a sentence that is more severe or less severe than the sentence called for in the guidelines." The court also informed him that he could not withdraw his plea if he were unhappy with the sentence imposed. As for the safety valve, the court said that Windham "appear[ed] to be eligible at this time for the safety valve," but it "depends on a number of things like [him] telling the full and complete truth when [he] debrief[s] with the agents." It added that Windham was "presently, . . . subject to be sentenced to a mandatory minimum ten years" but "[i]f the safety valve applie[d]," the court could sentence him "below the safety valve."

Notably, in making these comments, the court made clear that Windham's sentence "presently" was a minimum of ten years, there was no guarantee as to what sentence the court would impose and that the safety valve only could apply *if* he was eligible for it. In addition, Windham at no time said that he was only pleading guilty because he wanted to be eligible for the safety valve. Rather, he agreed at the hearing and in the plea agreement that he was pleading guilty because he was guilty and when asked if he was coerced into pleading guilty, he answered in the negative and did not mention the safety valve. As we've noted, Windham said multiple times during the second plea hearing that he wanted to get the plea over with and not go to trial.

Additionally, at no time *after* he learned that he was ineligible for safety relief, did Windham try to withdraw his guilty plea.

About four months after he pleaded guilty, the district court held a hearing to consider a motion by Windham's counsel to withdraw. At that hearing, Windham asked if he qualified for the safety valve and the court informed him that he likely was ineligible. At that same hearing, Windham told the district court that he wanted "to get this over and behind" him "as soon as possible." Two months later, when the case proceeded to sentencing, Windham made a final push for the safety valve, but he did not object to the voluntariness of his plea at that time, either.

Thus, reviewing the record as a whole, Windham has not shown that there was a reasonable probability that he would not have pleaded guilty if he knew that he was not eligible for the safety valve at the time of his second plea hearing. *Dominguez Benitez*, 542 U.S. at 83; *Monroe*, 353 F.3d at 1350.[2] Moreover, on this record, we

---

[2] To the extent Windham seeks to raise an ineffective assistance of counsel claim concerning his guilty plea, the record is not developed as to this issue. To prevail on a claim of ineffective assistance of counsel, an appellant must show that (i) his counsel's deficient performance (ii) prejudiced the defense. *United States v. Webb*, 655 F.3d 1238, 1258 (11th Cir. 2011). The Supreme Court, however, has reasoned that, "[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Massaro v. United States*, 538 U.S. 500, 504–05 (2003). Here, there is nothing in the record so far to show whether the failure of Windham's counsel to mention his ineligibility for the safety valve was for strategic reasons or what occurred between Windham and his counsel. *Id.* So, at this stage, we decline to consider the issue, but note that Windham could raise this claim in a collateral attack on his conviction under 28 U.S.C. § 2255. *Id.* at 504.

cannot say that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Monroe*, 353 F.3d at 1349.

## IV.

Next, we are unable to consider Windham's argument that the district court erred in denying his motion to suppress. Generally, a defendant waives all non-jurisdictional defects in his proceedings when, with the assistance of competent counsel, he knowingly and voluntarily pleads guilty. *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir. 1984). A challenge to the district court's denial of a motion to suppress evidence is non-jurisdictional. *United States v. McCoy*, 477 F.2d 550, 551 (5th Cir. 1973).[3] To preserve a non-jurisdictional challenge, the defendant must enter a conditional guilty plea that reserves the right to have an appellate court review an adverse determination of a specified pre-trial motion. Fed. R. Crim. P. 11(a)(2). Thus, the defendant waives the right to challenge an unfavorable ruling on a motion to suppress by entering an unconditional guilty plea or by omitting the issue from a conditional guilty plea. *See id.*; *United States v. Wai-Keung*, 115 F.3d 874, 877 (11th Cir. 1997).

Here, Windham did not enter a conditional guilty plea. As a result, he waived his ability to challenge the denial of his motion

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

to suppress because the district court's ruling is non-jurisdictional. Fed. R. Crim. P. 11(a)(2); *McCoy*, 477 F.2d at 551.

## V.

Finally, because of the sentence appeal waiver Windham agreed to, we are also unable to review his claim that the district court erred when it failed to pronounce the discretionary conditions of his supervised release at his sentencing hearing that it included in his written judgment. As we've long held, a sentence appeal waiver will be enforced if it was made knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993). To establish that the waiver was made knowingly and voluntarily, the government must show either that: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver. *Id.* The government cannot show that an appeal waiver was knowing and voluntary from an examination of the agreement's text alone. *Id.* at 1352. There is a strong presumption that statements made during the Rule 11 colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). We have enforced an appeal waiver where the waiver was mentioned during the plea colloquy and the defendant said that he understood the appeal waiver. *See United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001).

An appeal waiver may include a waiver to appeal difficult legal issues, debatable legal issues, or even blatant error. *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999). Thus, a defendant is

"free to bargain away his right to raise constitutional issues" on appeal, and even "a vigorous dispute about an issue during the sentencing proceedings does not preserve that issue for appeal when the terms of the appeal waiver do not except it from the waiver." *United States v. Bascomb*, 451 F.3d 1292, 1296–97 (11th Cir. 2006). An enforceable sentence appeal waiver bars challenges to conditions of supervised release. *United States v. Cordero*, 7 F.4th 1058, 1067 n.10 (11th Cir. 2021).

However, a sentence appeal waiver "is not an absolute bar to appellate review" and review may be available, despite a valid appeal waiver, when the defendant was "sentenced entirely at the whim of the district court," above the statutory maximum, or based on a constitutionally impermissible factor. *Johnson*, 541 F.3d at 1068 (quotations omitted). We've also noted that extreme circumstances, "for instance, if the district court had sentenced [the defendant] to a public flogging," may implicate due process and require that the defendant be allowed to appeal despite a valid appeal waiver. *Howle*, 166 F.3d at 1169 n.5.

A district court must pronounce at the defendant's sentencing hearing any discretionary conditions of supervised release, which is any condition of supervised release other than the mandatory conditions in 18 U.S.C. § 3583(d). *United States v. Rodriguez*, 75 F.4th 1231, 1246 (11th Cir. 2023). A district court's imposition of discretionary conditions of supervised release without announcing them at the sentencing hearing violates a defendant's due process right to notice and an opportunity to object to the conditions. *Id.*

at 1246–49. "When a sentence pronounced orally and unambiguously conflicts with the written order of judgment, the oral pronouncement governs." *United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000).

In the instant appeal, Windham argues that the district court erroneously failed to pronounce the discretionary conditions of his supervised release at sentencing. A recent decision of our Court addressed a claim similar to Windham's. *United States v. Read*, 118 F.4th 1317 (11th Cir. Oct. 3, 2024), *as corrected* (Oct. 3, 2024). In *Read*, the defendant argued "that the district court violated his right to due process when it failed to describe each condition during its oral pronouncement of his sentence." *Id.* at 1320. The government moved to dismiss the appeal in full, based on the appeal waiver in his plea agreement. We agreed, holding that Read's argument "that the district court violated his right to due process when it imposed his sentence without describing the standard conditions" was a "procedural challenge to the imposition of his sentence . . . which falls within the scope of his appeal waiver." *Id.* at 1321.

Here, just as in *Read*, Windham's claim is barred by his sentence appeal waiver. As we've already explained, Windham knowingly and voluntarily waived his right to appeal his sentence, the district court advised him of the terms of the appeal waiver, and he said he understood them. Thus, he knowingly and voluntarily entered an enforceable waiver of his right to challenge, among other things, his sentence on appeal.

Moreover, none of the appeal waiver's exceptions apply. Windham's 120-month custodial sentence was at the statutory mandatory minimum and well below the guidelines range, so there was no upward departure or variance. Additionally, the government did not appeal his total sentence. To the extent that Windham is arguing that we should create an exception to appeal waivers for due process claims like his and the one in *Read*, we are unable to do so. For one thing, *Read* squarely forecloses his argument, and we are bound by our prior precedent. *Dubois*, 94 F.4th at 1293. Further, we've held that a valid sentence appeal waiver includes debatable issues and constitutional challenges, which would include the issue raised on appeal that the district court violated Windham's due process rights by imposing discretionary conditions of supervised release in its written judgment that the court did not announce at sentencing.

Accordingly, Windham's knowing, and voluntary appeal waiver bars his argument that the district court erroneously failed to pronounce discretionary conditions of his supervised release, and we affirm.

**AFFIRMED.**