**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-10342
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ORLANDO PARADISE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:21-cr-00026-SCJ-JCF-1

_____

Before JORDAN, LUCK, and WILSON, Circuit Judges.

PER CURIAM:

Orlando Paradise pleaded guilty to possessing a firearm as a felon, in violation of 18 U.S.C. sections 922(g)(1) and 924(e). The district court imposed a sentence (enhanced under the Armed

Career Criminal Act) of 180 months' imprisonment. Paradise appeals his sentence on two grounds. First, he argues that the district court erred under *Erlinger v. United States*, 602 U.S. 821 (2024), by finding his Armed Career Criminal Act offenses were committed on different occasions. Second, he contends that his prior Georgia marijuana convictions were not "serious drug offenses" under the Armed Career Criminal Act because Georgia's definition of marijuana was broader than its federal counterpart when he was convicted. The government moved to dismiss the first ground of Paradise's appeal based on the appeal waiver in his plea agreement. After careful consideration, we dismiss Paradise's appeal as it relates to the first issue, and affirm as to the second.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2021, a Gainesville, Georgia police officer responded to a tip that someone was selling drugs out of a black sport-utility vehicle in a parking lot. When the officer arrived, he found Paradise sitting in a black SUV. The officer approached Paradise, obtained his information, and discovered that there was a warrant out for his arrest. The officer attempted to search Paradise for weapons, but Paradise fled, leading the officer on a foot chase through the neighborhood. The officer eventually caught and arrested Paradise. Law enforcement searched Paradise and the black SUV. They found marijuana, heroin, fentanyl, THC gummies, roughly four-thousand dollars in cash, a loaded 9mm handgun, and several rounds of .38 caliber ammunition. The officers also discovered a stolen .38 caliber revolver in some bushes Paradise had passed while fleeing.

A grand jury indicted Paradise for several federal drug and gun crimes. He negotiated a plea deal in which he agreed to plead guilty to possessing a firearm as a felon in exchange for the government dropping the other charges. As part of the plea agreement, Paradise expressly waived his right to appeal his conviction and sentence on all but a few specified grounds. One of those grounds was whether his prior marijuana convictions qualified as "serious drug offenses" under the Armed Career Criminal Act. After confirming with Paradise that he knowingly possessed a firearm as a felon, the district court accepted Paradise's guilty plea.

The probation office prepared a presentence investigation report that recommended an enhanced sentence under the Armed Career Criminal Act based on Paradise's three prior Georgia convictions for possessing marijuana with intent to distribute. Paradise was previously convicted on August 20, 2012, March 25, 2014, and December 19, 2017. Based on the enhancement, the probation office calculated a guideline range of 210 to 262 months' imprisonment. Absent the Armed Career Criminal Act enhancement, Paradise's guideline range would have been 100 to 125 months' imprisonment.

Paradise objected to the Armed Career Criminal Act enhancement, arguing that his prior convictions should not qualify as predicate offenses because Georgia defined marijuana more broadly than the federal government. He also objected to the district court's determination that his prior convictions qualified as

controlled substance offenses under the sentencing guidelines.[1] The district court overruled Paradise's objections, applied the Armed Career Criminal Act enhancement, and imposed a below-guidelines sentence of 180 months' imprisonment followed by three years of supervised release.  Paradise appeals his sentence.

He raises two issues on appeal.  First, he argues (for the first time on appeal) that the district court committed an *Erlinger* error by determining that his former marijuana offenses transpired on different occasions for the purposes of the Armed Career Criminal Act.  Second, he contends that his prior marijuana convictions do not qualify as predicate offenses under the Armed Career Criminal Act because Georgia's marijuana definition was broader than its federal counterpart when he was convicted.  The government moved to dismiss Paradise's appeal as to the *Erlinger* issue based on the appeal waiver he signed in his plea agreement.  We carried the motion to dismiss with the case.

## STANDARDS OF REVIEW

"We review de novo the scope of an appeal waiver." *United States v. Read*, 118 F.4th 1317, 1320 (11th Cir. 2024).  Normally, we also "review de novo constitutional sentencing issues." *United States v. Smith*, 775 F.3d 1262 (11th Cir. 2014) (alteration adopted).

---

[1] Paradise preserves this objection on appeal, but he acknowledges his argument is barred by our precedent, so we do not address the issue further.  *See United States v. Dubois*, 94 F.4th 1284, 1296 (11th Cir. 2024), *cert. granted, judgment vacated sub nom. Dubois v. United States.*, 145 S. Ct. 1041 (2025), *and reinstated by* 139 F.4th 887, 889 (11th Cir. 2025).

23-10342                Opinion of the Court                5

But when a constitutional challenge is raised for the first time on appeal, we review only for plain error. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). We review "de novo whether a conviction qualifies as a serious drug offense under the [Armed Career Criminal Act]." *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016).

## DISCUSSION

### *Erlinger Error*

In *Erlinger*, the Supreme Court held "that judicial factfinding by a preponderance of the evidence that a defendant has three [Armed Career Criminal Act] predicate convictions committed on different occasions violates the Fifth Amendment's guarantee of due process of law and the Sixth Amendment's guarantee to a jury trial." *United States v. Rivers*, 134 F.4th 1292, 1305 (11th Cir. 2025) (citing *Erlinger*, 602 U.S. at 830, 833, 835). The Supreme Court explained that, for the purposes of the Act, the defendant must either freely admit that his prior offenses occurred on different occasions, or that fact must be determined by a jury beyond a reasonable doubt. *Id.* The Supreme Court noted that its decision was "'on all fours with *Apprendi* and *Alleyne*,' which together prohibited judges from 'increas[ing] the prescribed range of penalties to which a criminal defendant is exposed' based on judicial factfinding by a preponderance of the evidence." *Id.* (quoting *Erlinger*, 602 U.S. at 833–35); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Alleyne v. United States*, 570 U.S. 99, 111–13 (2013).

Here, both parties agree that the district court committed an *Erlinger* error by finding that Paradise's prior marijuana offenses occurred on different occasions. Paradise argues that this error requires the reversal of his sentence. The government responds that Paradise's appeal of this issue is barred by the appeal waiver in his plea agreement, and even if it were not, that Paradise cannot show plain error.

We agree with the government that Paradise's appeal of this issue is barred by his appeal waiver. In the alternative, we also agree that Paradise has not shown plain error affecting his substantial rights.

## A.

"A defendant may knowingly and voluntarily waive his right to appeal his sentence." *Read*, 118 F.4th at 1320. If a defendant waives his right, he gives up the right to appeal even blatant errors, because, otherwise, an appeal waiver would be "nearly meaningless." *See id.* (citation omitted). "As with contracts, we interpret appeal waivers 'consistent with the parties' intent.'" *Id.* at 1321 (citation omitted). "We give the language of the agreement its 'ordinary and natural meaning unless the parties indicate otherwise.'" *Id.* (citation omitted). Paradise's appeal waiver stated:

> To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence . . . on any ground, except . . . [t]he Defendant may file a direct appeal on the limited issue of whether his prior convictions for Possession with Intent to Distribute

> Marijuana prior to 2018 constitute a 'serious drug of-
> fense' under 18 U.S.C. [section] 924(e)(2).

Paradise concedes that he signed the appeal waiver knowingly and voluntarily. He contests only whether it covers the *Erlinger* error. Based on the plain language of the agreement, we conclude that Paradise waived his right to appeal the district court's *Erlinger* error.

Paradise's arguments to the contrary fall short. First, he asserts that the appeal waiver should not apply because *Erlinger* errors are jurisdictional. "A jurisdictional defect is one that 'strip[s] the court of its power to act and ma[kes] its judgment void.'" *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001) (citation omitted). But we have held that "*Apprendi* and analogous errors" are *not* jurisdictional. *See id.* And we have no reason to think that *Erlinger* errors, which are in the same family as *Apprendi* errors, are any different. *See Rivers*, 134 F.4th at 1305. Like *Apprendi* errors, *Erlinger* errors "are errors in criminal procedure that do not occur or ripen until the time of sentencing and affect at most the permissible sentence but do not invalidate the criminal conviction." *McCoy*, 266 F.3d at 1254. Here, the district court's *Erlinger* error—committed at sentencing—does not affect our jurisdiction over Paradise's appeal. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742.

Second, Paradise contends that—because of the *Erlinger* error—the district court imposed a sentence above the statutory maximum. Paradise argues that "there are certain fundamental and immutable legal landmarks within which the district court must operate regardless of the existence of sentence appeal

waivers," one of which is that "a defendant [can] not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute." *United States v. Bushert*, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993) (citation omitted). Without the Armed Career Criminal Act enhancement, Paradise would have faced a statutory maximum sentence of 120 months' imprisonment, rather than a mandatory minimum of 180 months. *See* 18 U.S.C. § 924(a)(2) (2022); *id.* § 924(e). But the same argument about exceeding the statutory maximum could be made regarding *Apprendi* errors. *See Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). And we have repeatedly held that *Apprendi* errors are subject to valid appeal waivers. *See United States v. Rubbo*, 396 F.3d 1330, 1335 (11th Cir. 2005) ("[T]he right to appeal a sentence based on *Apprendi/Booker* grounds can be waived in a plea agreement."); *United States v. Grinard-Henry*, 399 F.3d 1294, 1297 (11th Cir. 2005) ("[W]e conclude that [appellant's] *Apprendi/Blakely/Booker* claim on appeal does not fall within any of the exceptions to his appeal waiver."). Again, we see no reason to treat *Erlinger* errors differently from other errors in the *Apprendi* family.

In short, by signing his plea agreement, Paradise knowingly and voluntarily waived his right to appeal the district court's *Erlinger* error. Thus, that portion of his appeal is dismissed.

## B.

In the alternative, we would affirm because Paradise has not shown plain error. Paradise concedes that we should review this issue for plain error because he did not object below. *See United States v. McKinley*, 732 F.3d 1291, 1296 (11th Cir. 2013) ("[A]s with other alleged constitutional errors, specifically errors of the *Apprendi* variety, the failure to make a timely objection results in this [c]ourt's application of plain error review."); *see also United States v. Edwards*, 142 F.4th 1270, 1279 (11th Cir. 2025) (reviewing for plain error the defendant's "conten[tion] that the district court erred in enhancing his sentence under [the Act] because the government failed to prove beyond a reasonable doubt that his three predicate convictions occurred on different occasions").

"Under plain-error review, the defendant has the burden to show that there is (1) error (2) that is plain and (3) that affects substantial rights." *United States v. Monroe*, 353 F.3d 1346, 1350 (11th Cir. 2003) (cleaned up). "[I]f the first three prongs are satisfied, we may exercise discretion to correct the error if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Madden*, 733 F.3d 1314, 1322 (11th Cir. 2013). On plain-error review, we may review the whole record when considering the effect of any error on substantial rights. *Monroe*, 353 F.3d at 1350. For an error to affect a defendant's substantial rights, "there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Greer v. United States*, 593 U.S. 503, 507–08 (2021) (citation omitted). "The substantial rights analysis is like harmless error review but

with a twist:  the defendant, not the government, 'bears the burden of persuasion with respect to prejudice.'"  *United States v. Iriele*, 977 F.3d 1155, 1177 (11th Cir. 2020) (citation omitted); *see also Edwards*, 142 F.4th at 1281 (explaining that, "to prevail on plain error," the defendant "must show, at step three, that the *Erlinger* error affected his 'substantial rights'").

While Paradise has established the first two plain error requirements, he has not shown the third—that the district court's *Erlinger* error affected his substantial rights.  Nor can he, as it is clear his prior marijuana convictions occurred on different occasions.  The Supreme Court has explained that "occasion," in the context of the Armed Career Criminal Act, ordinarily means "an event or episode—which may, in common usage, include temporally discrete offenses."  *Wooden v. United States*, 595 U.S. 360, 367 (2022).  Several factors can be relevant in determining whether offenses occurred on different occasions, but "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions."  *Id.* at 370; *see also United States v. Penn*, 63 F.4th 1305, 1318 (11th Cir. 2023).  As the Supreme Court has recognized, courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart."  *Wooden*, 595 U.S. at 370.

The three marijuana convictions which underlie Paradise's Armed Career Criminal Act enhancement are separated by *years*.  They occurred in 2012, 2014, and 2017, respectively.  No reasonable person could say that Paradise's prior marijuana offenses

occurred on the same occasion.  *See Penn*, 63 F.4th at 1318 (holding that "no reasonable person would say" that defendant's "two sales of cocaine, thirty days apart, occurred on the same occasion"). Thus, while the district court committed an *Erlinger* error by finding that Paradise's prior offenses occurred on different occasions, that error did not affect his substantial rights, because the result would have been the same had the question been sent to a jury.

Ultimately, Paradise has not shown plain error, and if the appeal waiver did not bar this issue, we would affirm in any event.

### Serious Drug Offenses

Paradise contends that his prior marijuana convictions are not "serious drug offenses" under the Armed Career Criminal Act because Georgia's definition of marijuana was broader than the corresponding federal definition when he was convicted.  We disagree.

We use the categorical approach to evaluate whether a defendant's state conviction qualifies as a serious drug offense under the Armed Career Criminal Act.  *See United States v. Conage*, 976 F.3d 1244, 1250 (11th Cir. 2020).  "[A] state conviction cannot serve as an [Armed Career Criminal Act] predicate offense if the state law under which the conviction occurred is categorically broader—that is, if it punishes more conduct—than [the Act]'s definition of a 'serious drug offense.'" *United States v. Jackson*, 55 F.4th 846, 850 (11th Cir. 2022).  Accordingly, we must "compare the state law that defines [Paradise's] prior [marijuana]-related offenses with [the Act]'s definition of 'serious drug offense' to see whether the state crime

is categorically broader than a 'serious drug offense.'" *Id.* at 851 (citation omitted). "[A] prior state drug conviction constitutes an [Armed Career Criminal Act] predicate if the drugs on the federal and state schedules matched when the state drug offense was committed." *Brown v. United States*, 602 U.S. 101, 108, 119 (2024).

The question under the categorical approach boils down to whether the state law "substantially corresponds" to the federal offense. *See Quarles v. United States*, 587 U.S. 645, 654-55 (2019). We may not rely on "legal imagination" in our evaluation—rather, there must be "a realistic probability, not a theoretical possibility," that the Georgia "statute covered more than its federal counterpart." *Chamu v. U.S. Att'y Gen.*, 23 F.4th 1325, 1328 (11th Cir. 2022); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). To show a realistic probability, a plaintiff may point to a case in which a state court applied the statute to penalize the broader conduct. *Id.* That said, when the language of the statute *itself* creates a realistic probability of broader application, a defendant need not point to a specific case. *See Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066, 1071-72 (11th Cir. 2013); *Bourtzakis v. U.S. Att'y Gen.*, 940 F.3d 616, 624 (11th Cir. 2019).

When Paradise was convicted, the Armed Career Criminal Act defined "serious drug offense" as "an offense under [s]tate law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii) (effective Oct. 6, 2006 through Dec. 20, 2018). Controlled substances were found on the federal drug schedule and

included marijuana.  *Id.*; 21 U.S.C. § 802(16).  At the time of Paradise's offenses, the federal drug schedule defined marijuana as:

> all parts of *the plant Cannabis sativa L.*, whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.  Such term does not include *the mature stalks of such plant*, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16) (2012); *id.* (2014); *id.* (2017) (emphasis added).

Paradise was thrice convicted in Georgia for possessing marijuana with intent to distribute.  *See* Ga. Code § 16-13-30(j)(1) ("It shall be unlawful for any person to . . . possess with intent to distribute marijuana.").  When Paradise was convicted, Georgia defined marijuana as:

> all parts of *the plant of the genus Cannabis*, whether growing or not, the seeds thereof, the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include samples as described in subparagraph (P) of paragraph (3) of Code Section 16–13–25 and shall not include *the completely defoliated mature stalks of such*

*plant*, fiber produced from such stalks, oil, or cake, or the completely sterilized samples of seeds of the plant which are incapable of germination.

Ga. Code § 16-13-21(16) (emphasis added) (effective July 1, 2011 through May 9, 2019).

Paradise argues that Georgia's definition of marijuana was broader than its federal counterpart—and thus that his convictions are not "serious drug offenses" under the Act—for two reasons. First, he contends that Georgia criminalized *all* species of cannabis, while federal law only criminalized the species "Cannabis sativa L." Second, he argues that Georgia's definition excepted "completely defoliated mature stalks" from penalization, while federal law only excepted "mature stalks." Both of Paradise's overbreadth arguments fall short.

Paradise's first argument is barred by our precedent. We have rejected the contention that the federal definition of marijuana only covers one species of cannabis. *See United States v. Gaines*, 489 F.2d 690, 690–91 (5th Cir. 1974) (holding that the federal definition of marijuana covers *all* species of marijuana); *United States v. Maskeny*, 609 F.2d 183, 188 (5th Cir. 1980) (same); *see also United States v. Sanapaw*, 366 F.3d 492, 495 (7th Cir. 2004) ("[I]t would be manifestly unreasonable to interpret the [federal definition of marijuana] to apply solely to Cannabis sativa L. . . . It is absurd to believe that Congress intended to ban the euphoric effect of one species of marijuana but not the exact same euphoric effect of other species of marijuana."). Thus, the slight difference in language

between the Georgia and federal definitions regarding species is immaterial—in application, they cover the same conduct.

Paradise's second argument fares no better. He contends that Georgia's definition of marijuana is broader than its federal counterpart because it excepts "the *completely defoliated* mature stalks of" marijuana from penalization, while the federal definition excepts "the mature stalks of" marijuana from penalization. *Compare* Ga. Code § 16-13-21(16) (2012) (emphasis added) *with* 21 U.S.C. § 802(16) (2012). Thus, to succeed, Paradise must show a "realistic probability" that a defendant would be prosecuted under Georgia law for possessing a *foliated* mature stalk of marijuana but would not be prosecuted under federal law for possessing the same. *See Chamu*, 23 F.4th at 1328. Paradise cannot do so because, while Georgia's definition uses slightly more specific language, both statutes cover the same conduct. A defendant would face prosecution under *both* statutes if he were apprehended with a mature *foliated* stalk of marijuana—i.e., a stalk covered in marijuana leaves. While both definitions except the *stalk* of the marijuana plant from penalization, neither statute excepts the *leaves* of the marijuana plant. Indeed, marijuana leaves are in large part what both statutes are designed to prohibit. *See United States v. Osburn*, 955 F.2d 1500, 1503 n.3 (11th Cir. 1992) (noting that mature marijuana leaves contain the most THC, "the active ingredient in marijuana"). Paradise points to no case holding that *foliated* marijuana stalks are excepted

from the federal definition.[2]   Nor could he, as it would be absurd to interpret the statute as carving out an exception that would allow the possession of marijuana leaves—so long as they are still attached to the stalk.  Such an exception would swallow the rule.

Georgia law bears this out.  In that state, "a drug is a controlled substance . . . only if it is listed as such in both Georgia *and* federal schedules."  *See C.W. v. Dep't Hum. Servs.*, 836 S.E. 2d 836, 837 (Ga. Ct. App. 2019) (finding that "under the plain language of the statute" a drug is a "controlled substance" only "if it is listed as such in both Georgia *and* federal schedules"); Ga. Code Ann. § 16-13-21(4).  Thus, because under Georgia law a controlled substance must appear on both state and federal drug schedules, Paradise's prior convictions for possessing marijuana with the intent to distribute could not have been for broader conduct than is proscribed by federal law.  *Cf. C.W.*, 836 S.E.2d at 837 (finding marijuana did not qualify as a controlled substance because it was on the federal drug schedule but not the Georgia drug schedule).

In short, Paradise has not shown that Georgia's definition of marijuana is categorically broader than the federal definition. Thus, his previous marijuana convictions qualify as "serious drug offenses" under the Armed Career Criminal Act.

---

[2] Instead, Paradise points to our decision in *Said v. U.S. Att'y Gen.*, in which we held that Florida's definition of marijuana was incongruent with the federal definition.  *See* 28 F.4th 1328, 1333–34 (11th Cir. 2022).  But *Said* is easily distinguishable because the Florida statute at issue encompassed *all* forms of marijuana and did not contain any exceptions.

## CONCLUSION

Paradise has not shown any error which requires the reversal of his sentence. Accordingly, we dismiss the portion of Paradise's appeal barred by his appeal waiver and affirm as to the remaining issue.

**DISMISSED IN PART, AFFIRMED IN PART.**